[No. A103684. First Dist., Div. Three. Feb. 24, 2005.]

GARY GRESHER, Plaintiff and Appellant, v.
ELOISE ANDERSON, as Director, etc., et al., Defendants and Respondents.

94

**COUNSEL**

The Social Justice Law Project and Peter E. Sheehan for Plaintiff and Appellant.

Bill Lockyer, Attorney General, James M. Humes, Assistant Attorney General, and Teresa Stinson, Deputy Attorney General, for Defendants and Respondents.

OPINION

**PARRILLI, J.**—This case presents questions regarding the California Department of Social Services's handling of the process for exempting certain community and child care workers from the ban on employment imposed on those with criminal convictions. We conclude the process is unduly restrictive in a number of respects.

Gary Gresher filed suit as a taxpayer and citizen against the Department of Social Services and two of its directors (collectively, the Department). (See *Connerly v. State Personnel Bd.* (2001) 92 Cal.App.4th 16, 29 [112 Cal.Rptr.2d 5].) Gresher challenged various Department procedures for dealing with employees of community care facilities and applicants for Trustline registration who are found to have criminal records.[1] The case was disposed of below on a series of cross-motions for summary judgment or summary adjudication. The trial court ruled against Gresher and in favor of the Department, and ultimately entered a judgment dismissing the action. Gresher appeals. We reverse. Our review is de novo. (*Wiener v. Southcoast Childcare Centers, Inc.* (2004) 32 Cal.4th 1138, 1142 [12 Cal.Rptr.3d 615, 88 P.3d 517].)

## STATUTORY AND REGULATORY BACKGROUND

■ Persons seeking employment at a community care facility must provide a set of fingerprints for the purpose of determining whether they have a criminal record. (Health & Saf. Code, §§ 1522, subds. (a)–(c), 1568.09, subds. (a) & (b), 1569.17, subds. (a)–(c), 1596.871, subds. (a)–(c).)[2] The same requirement applies to persons seeking a Trustline registration. (§ 1596.603.) Those with criminal convictions other than minor traffic violations are ineligible for employment or registration, unless the Department grants an exemption. (§§ 1522, subd. (b)(4)(A), 1568.09, subd. (a)(1), 1569.17, subd. (a)(1), 1596.871, subd. (a)(1), 1596.607, subd. (a)(1).)

■ The Department may grant an exemption on its own motion "if the person's criminal history indicates that the person is of good character based on the age, seriousness, and frequency of the conviction or convictions." (§§ 1522, subd. (c)(4), 1568.09, subd. (c)(5), 1569.17, subd. (c)(4), 1596.871, subd. (c)(3), 1596.607, subd. (a)(1).) However, no exemption may be granted

---

[1] "Community care facilities" are those providing nonmedical residential care, day care, or foster family agency services to persons including the physically and mentally incompetent, and abused and neglected children. (Health & Saf. Code, § 1502, subd. (a).) The Trustline registry is maintained by the Department to screen providers of child care who are not required to be licensed. (Health & Saf. Code, § 1596.60 et seq.)

[2] Further statutory references are to the Health and Safety Code, unless otherwise specified.

for those convicted of certain offenses. (§§ 1522, subd. (g)(1), 1568.09, subd. (f)(1), 1569.17, subd. (f)(1), 1596.871, subd. (f)(1), 1596.607, subd. (a)(1).) Gresher's claims are made on behalf of persons with convictions for which an exemption may be granted. If the Department does not exempt such persons on its own motion, it must notify the community care facility licensee. If the conviction is for a felony, the licensee is told to terminate the person's employment immediately and exclude them from the facility; if the conviction is for a misdemeanor, the Department must decide whether to permit the person to remain in the facility pending a decision on the exemption. The licensee is permitted to seek an exemption on the employee's behalf. (§§ 1522, subd. (c)(3), 1568.09, subd. (c)(4), 1569.17, subd. (c)(3), 1596.871, subd. (c)(2).)

■ The Department also notifies the employee that the licensee has been informed of the employee's criminal history.[3] However, the employee "may seek an exemption only if the licensee terminates the person's employment or removes the person from the facility after receiving notice from the department." (§§ 1522, subd. (c)(5), 1568.09, subd. (c)(6), 1569.17, subd. (c)(5), 1596.871, subd. (c)(4).) A Trustline applicant receives a similar notification but may seek an exemption on his or her own behalf without preconditions. (§§ 1596.607, subd. (a)(1), 1596.871, subd. (f).)

■ By regulation, the Department allows 45 days from the time notice is received for an exemption request to be submitted. (Cal. Code Regs., tit. 22, §§ 80019.1(d), 87219.1(d), 87819.1(d), 101170.1(d), 102370.1(d).)[4] If the employee or applicant "is awaiting trial for a crime other than a minor traffic violation, the [Department] may cease processing the application until the conclusion of the trial." (§§ 1522, subd. (a)(4)(B), 1568.09, subd. (a)(3)(B), 1569.17, subd. (a)(3)(B), 1596.871, subd. (a)(4)(B).)

■ The notices sent by the Department ask for the convicted person's explanation of the events underlying the conviction, what the person has done to prevent reoffending, written evidence of training, education, or therapy, and three letters of reference. (See Cal. Code Regs., tit. 22, §§ 80019.1(e) & (f), 87819.1(e) & (f), 101170.1(e) & (f), 102370.1(c)(3) & (4).) The Department's regulations require it to keep a written record of its reasons for denying an exemption. (Cal. Code Regs., tit. 22, §§ 80019.1(h), 87819.1(h), 101170.1(h), 102370.1(f).) If the Department denies an exemption, "[t]he excluded person, the facility, and the licensee shall be given written notice of the basis of the [D]epartment's action and of the excluded person's right to an appeal." (§§ 1558, subd. (b), 1569.58, subd. (b), 1596.8897, subd. (b); see

---

[3] Neither the licensee nor the employee is given any specific information about the convictions at issue, a practice challenged by Gresher in this case.

[4] Formerly, and at the time the motions were heard below, only 30 days were allowed.

also § 1568.092, subd. (b).) If the excluded person fails to file a written appeal within 15 days, the denial becomes final. (*Ibid.*) If an appeal is filed, an administrative hearing is held under Government Code section 11506 et seq. (§§ 1558, subd. (e), 1568.092, subd. (e), 1569.58, subd. (e), 1596.8897, subd. (e), 1596.607, subd. (b).)

■ Persons denied an exemption are barred from employment in a community care facility for life, though they may petition the Department for reinstatement after a year. (§§ 1558, subd. (h), 1568.092, subd. (h), 1569.58, subd. (h), 1596.8897, subd. (h), 1596.607, subd. (b).)

## DISCUSSION

Before addressing the parties' arguments, we briefly summarize Gresher's claims on appeal in the order the issues arise in the exemption process. He contends:

(1) The Department's practice of barring employees of certified family homes from seeking exemptions on their own behalf violates the governing statutes and due process guarantees.

(2) The court erroneously granted the Department summary adjudication on Gresher's challenge to the policy of providing neither a statement of reasons nor an opportunity to appeal when a Trustline application is denied based on a nonexemptible conviction, because the Department's motion failed to address this claim.

(3) The Department's "exemption needed" notice improperly informs employees they may seek an exemption only if their employment is terminated *because* the Department notified their employer of their criminal record, whereas the statutes permit individuals to seek exemption if their employment is terminated *after* the employer receives notice.

(4) The "exemption needed" notice fails to comply with due process requirements, because it does not tell the recipients which convictions they need to address in their application.

(5) The Department's policy of closing Trustline applications for applicants who are in deferred judgment or pretrial diversion programs is not authorized by statute, and violates equal protection principles.

(6) The Department's "exemption denied" notice violates statutory and due process requirements, because it fails to inform applicants of the basis for the denial.

We do not reach the constitutional issues if Gresher's claims can be resolved under the governing statutes. (*Kollander Construction, Inc. v. Superior Court* (2002) 98 Cal.App.4th 304, 314 [119 Cal.Rptr.2d 614].) The Department's interpretation of the statutes is entitled to our consideration and respect, but is not binding or necessarily even authoritative. We must independently analyze the statutory text, giving the Department's views a legally informed, commonsense assessment. The degree of deference we accord to those views depends largely on whether the Department has a comparative interpretative advantage over the courts, and on whether it has arrived at a correct interpretation. (*Bonnell v. Medical Bd. of California* (2003) 31 Cal.4th 1255, 1264–1265 [8 Cal.Rptr.3d 532, 82 P.3d 740]; *Yamaha Corp. of America v. State Bd. of Equalization* (1998) 19 Cal.4th 1, 7–8, 12–13 [78 Cal.Rptr.2d 1, 960 P.2d 1031].) As our discussion below indicates, we conclude that any comparative interpretative advantage enjoyed by the Department has failed to result in policies consistent with the terms of the statutes.

## 1. *The Certified Family Home Employee Policy*

The Department's first motion for summary judgment failed to address Gresher's claim on behalf of certified family employees, and therefore the trial court declined to rule on the issue. The Department brought a second motion for summary judgment, arguing that "certified family employees" were not a category recognized by statute, and in any event persons seeking to work in certified family homes were not legally entitled to notice or the right to seek an exemption if the Department disqualified them based on their criminal record.

The Department distinguished between *licensed* foster care facilities, which are monitored by the Department, and foster homes and parents *certified* by Foster Family Agencies. Only the Foster Family Agencies are licensed by the Department, which has no direct oversight of certified foster family homes. The Department was skeptical that there were any employees in certified family homes, but contended that unlike employees of licensed foster care facilities, who are entitled to notice and the opportunity to seek an individual exemption under section 1522, subdivision (c), employees of certified family homes are accorded no such rights under section 1522, subdivision (d).[5]

---

[5] Section 1522, subdivision (c)(5) provides: "Concurrently with notifying the [community care facility] licensee pursuant to paragraph (3), the department shall notify the affected individual of his or her right to seek an exemption pursuant to subdivision (g). The individual

Gresher responded by noting that the Department's own regulations contemplate criminal record clearances prior to "employment . . . in the certified family home." (Cal. Code Regs., tit. 22, § 88019, subd. (a)(3).) He argued that section 1522, subdivision (d) places no limitation on who may apply for an exemption. While subdivision (c)(5) bars community care facility employees from seeking exemptions until their employment is terminated or they are removed from the facility, Gresher contended that limitation does not apply to certified family home employees.

The Department replied that because section 1522, subdivision (c) specifically contemplates an individual exemption process for employees of licensed care facilities, while subdivision (d) authorizes no such process for certified foster parents or employees, it is clear the Legislature did not intend to create an individual right for the second category of persons. The court agreed with the Department, ruling that "[t]he mere absence . . . of language prohibiting 'certified family employees' from seeking exemptions on their own behalf is not sufficient for this Court to read into the statute a requirement that Defendants permit 'certified family employees' to seek such exemptions."

The parties renew their statutory arguments on appeal. Our review of the statutes convinces us that the Department's position is untenable. Section 1522 does not neatly distinguish between licensed foster family homes and certified foster family homes. The introductory paragraph of the statute refers generally to the need for fingerprint identification of persons providing services "in a community care facility, foster family home, or a certified family home of a licensed foster family agency." Subdivision (c) governs fingerprinting "as a condition to employment, residence, or presence in a

---

may seek an exemption only if the licensee terminates the person's employment or removes the person from the facility after receiving notice from the department pursuant to paragraph (3)."

Section 1522, subdivision (d) governs conditions for "issuing a license, special permit, or certificate of approval to any person or persons to operate or manage a foster family home or certified family home." (§ 1522, subd. (d)(1).) Paragraphs 7 and 8 of this subdivision provide, in pertinent part:

"(7) If the State Department of Social Services finds that the applicant, or any other person specified in subdivision (b) [including employees], has been convicted of a crime other than a minor traffic violation, the application shall be denied, unless the director grants an exemption pursuant to subdivision (g).

"(8) If the State Department of Social Services finds after licensure or the granting of the certificate of approval that the licensee, certified foster parent, or any other person specified in paragraph (2) of subdivision (b), has been convicted of a crime other than a minor traffic violation, the license or certificate of approval may be revoked by the department or the foster family agency, whichever is applicable, unless the director grants an exemption pursuant to subdivision (g)." (Paragraph 2 of subdivision (b) currently describes persons exempt from the background check requirements. Presumably, the reference in subdivision (d)(8) is to an earlier version of the statute in which paragraph 2 of subdivision (b) included "[a]ny person, other than a client, residing in the facility." See Stats. 1999, ch. 881, § 3.)

community care facility" "[s]ubsequent to initial licensure." (§ 1522, subd. (c)(1).) Subdivision (d) governs *both* licensed foster family homes *and* certified foster family homes. It refers to the issuance of "a license, special permit, or certificate of approval to any person or persons to operate or manage a foster family home or certified family home." (§ 1522, subd. (d)(1).) Paragraph 8 of subdivision (d) contemplates revocation of "the license or certificate of approval" based on a criminal conviction "unless the director grants an exemption pursuant to subdivision (g)."

Section 1522, subdivision (g)(1) authorizes the director to grant an exemption "from disqualification for a license or special permit . . . or certificate of approval . . . if the director has substantial and convincing evidence to support a reasonable belief that the applicant and the person convicted of the crime, *if other than the applicant*, are of such good character as to justify issuance of the license or special permit or granting an exemption for purposes of subdivision (c)." (Italics added.) Clearly, the Legislature expected that a "person convicted of the crime" might be the "applicant" for an exemption. We do not believe the reference at the end of this sentence to subdivision (c), which pertains only to licensed facilities, bars employees of certified foster family homes from seeking exemptions on their own behalf. Such an interpretation would render meaningless the reference to a "certificate of approval" earlier in the same sentence, and would foreclose not only employees but also the Foster Family Agencies that certify their employers from seeking exemptions. Moreover, the same language appears in section 1596.871, subdivisions (c) and (f), which govern the granting of exemptions to Trustline applicants. (§ 1596.607.) Trustline applies only to child care providers who are not required to be licensed. (§ 1596.60, subd. (c).)

Thus, employees of both licensed and certified foster family homes are authorized to seek exemptions under section 1522, subdivisions (d) and (g). The limitation imposed by subdivision (c) applies only to employees of licensed facilities. Documents filed by Gresher in response to the Department's summary judgment motion show that the Department has interpreted section 1522, subdivision (d) to permit Foster Family Agencies to seek exemptions for employees of certified foster family homes. Denying employees the same right is arbitrary and inconsistent with the terms of subdivisions (d)(8) and (g)(1) of the statute. The fact that the Department does not monitor unlicensed foster homes as it does licensed facilities is irrelevant to the analysis. The functions the Department performs in checking criminal backgrounds and ruling on exemption requests are no different for licensed and unlicensed facilities.

## 2. *Denial of Trustline Applications Based on Nonexemptible Convictions*

In a supplemental opposition to the Department's first summary judgment motion, Gresher claimed the motion failed to address his claim "that the failure to provide timely and specific notice to trust line applicants of the specific conviction which allegedly renders the applicant ineligible for trust line registration violates statutory law and [] due process guarantees." Gresher referred to paragraph 16C of the complaint's factual recitals, which alleged the Department followed a "policy of not providing specific conviction information for individuals whose Trustline applications are denied because the individual allegedly has a conviction which renders him ineligible to obtain a child care license pursuant to Health and Safety Code section 1596.851." The court ruled that the Department's motion encompassed the "exemption needed" and "exemption denied" letters sent to Trustline applicants.

On appeal, Gresher asks us to remand the "non-exemptible trustline notification claim" to the trial court, contending this claim was not identified or challenged by the Department below. He refers us to another part of the complaint, in the first cause of action, which contends "the Department's failure to provide specific notice to Trustline applicants of the basis for denying or closing their Trustline application and their right to seek an exemption and of the specific convictions or other matters which lead to the denial or closure or which the Trustline applicant must address to obtain an exemption violates Health and Safety Code section 1596.607, and the due process guarantees of the California and federal Constitutions."

We cannot fault either the Department or the trial court for failing to recognize a claim involving "non-exemptible" convictions. In the papers he filed below, Gresher never referred to "non-exemptible" convictions, but only to convictions rendering applicants "ineligible" for Trustline registration. Convictions for which an exemption may be granted also make applicants "ineligible" for registration, without an exemption. Gresher did represent to the trial court at the hearing on the Department's motion that the claim pertained to the "non-exemptable [*sic*] situation." However, this issue is not properly framed by the complaint.

■ Paragraph 16C of the complaint, on which Gresher relied in the trial court, provides no clue leading to nonexemptible convictions. It refers to convictions rendering applicants ineligible under section 1596.851, a statutory provision speaking not to convictions in any direct sense, but to cessation of review when the Department finds an applicant had a prior license that was revoked, or a prior application or certificate of approval that was denied. The paragraph of the first cause of action on which Gresher relies for the first time

in this court refers twice to exemptions, and only a tortured inference might extract a claim pertaining to nonexemptible convictions. "A defendant moving for summary judgment need address only the issues raised by the complaint; the plaintiff cannot bring up new, unpleaded issues in his or her opposing papers." (*Government Employees Ins. Co. v. Superior Court* (2000) 79 Cal.App.4th 95, 98–99, fn. 4 [93 Cal.Rptr.2d 820].) Even a liberal reading of Gresher's complaint fails to yield fair notice of the claim he presses here. We will not remand for further proceedings on the question.

### 3. The "Exemption Needed" Notice Termination "Because of" Conviction

Employees of licensed community care facilities "may seek an exemption only if the licensee terminates the person's employment or removes the person from the facility after receiving notice from the department." (§§ 1522, subd. (c)(5), 1568.09, subd. (c)(6), 1569.17, subd. (c)(5), 1596.871, subd. (c)(4).) In his second motion for summary adjudication, Gresher challenged the propriety of the Department's "exemption needed" notices on the ground that they added a causation requirement not imposed by the statutes. The Department did not dispute Gresher's showing that the "exemption needed" notice sent to employees found to have criminal records informed them of their right to ask for an exemption "[i]f the licensee terminates your employment because of notification we provided regarding your criminal record," and that another form letter used by the Department told applicants their requests for individual exemptions would not be processed because they were not terminated "because of" the Department's criminal record notification. The Department ignored Gresher's argument on this point in its memorandum opposing his motion. In its response to Gresher's statement of facts, the Department took the position that it had no jurisdiction if an employee is terminated for reasons other than the criminal record notification. The court denied Gresher's motion without mentioning this claim.

In his opening brief on appeal, Gresher reasserts the claim that the Department's imposition of a causation requirement is inconsistent with the governing statutes. The Department makes no response in its opposing brief. We conclude the Department has waived any opposition to this claim. It is not the most substantial point raised by the complaint, but we are troubled by the evident absence of any avenue for administrative review of the Department's determination that an employee was not fired "because of" the "exemption needed" notice, and the consequent termination of the Department's processing of the employee's exemption request. The trial court should have granted Gresher's motion on this point.

### 4. The "Exemption Needed" Notice Omission of Conviction Information

The principal thrust of Gresher's second motion for summary adjudication was a challenge to the Department's "exemption needed" notice on due process grounds. Gresher contended the Department provided constitutionally inadequate notice under the state and federal Constitutions by failing to inform applicants for exemptions which convictions they needed to address in their exemption request. He attached copies of the form letters sent to individual employees and Trustline applicants, stating merely that the Department had "received criminal history" about them from the Department of Justice, and asking for a signed letter describing the events surrounding the conviction or convictions, why and how they happened, and what they had done to prevent such things from happening again. The notices inform the recipients that they may obtain a copy of their criminal record by writing to the Department of Justice, and provide an address for doing so.

The Department did not dispute Gresher's showing that for a decade prior to 1999, the Department and the Department of Justice had provided specific conviction information in "exemption needed" notifications for the Trustline program. It justified its current policy of not providing specific conviction information, both in its response to Gresher's motion and in its own summary judgment motion, by claiming that doing so would be an onerous administrative burden and would undermine the Department's ability to protect the confidentiality of information contained in "rap sheets."

The trial court sided with the Department, granting its motion and denying Gresher's. The court ruled that: (1) the private interest in obtaining the jobs in question was "minimal," given the "presumptive statutory disqualification" of persons with criminal records; (2) the governmental interest at stake was high, given the vulnerability of the populations served by community care facilities; (3) the "exemption needed" letter adequately informed recipients of their right to seek an exemption and their opportunity to obtain their criminal record; and (4) due process was afforded to the affected persons by granting them the right to pursue an appeal from the Department's denial of an exemption, with the right of discovery.

The due process analysis is well described in *Ryan v. California Interscholastic Federation-San Diego Section* (2001) 94 Cal.App.4th 1048 [114 Cal.Rptr.2d 798]: "Our state due process constitutional analysis differs from that conducted pursuant to the federal due process clause in that the claimant need not establish a property or liberty interest as a prerequisite to invoking due process protection. [Citations.] Focused rather on an individual's due process liberty interest to be free from arbitrary adjudicative procedures [citation], procedural due process under the California Constitution is 'much more inclusive' and protects a broader range of interests than

under the federal Constitution [citations]. According to our Supreme Court, it 'has expanded upon the federal analytical base by focusing on the administrative process itself.' [Citation.]" (*Id.* at p. 1069.)

██ "In *People v. Ramirez* [(1979)] 25 Cal.3d [260,] 263–264 [158 Cal.Rptr. 316, 599 P.2d 622] [(*Ramirez*)], our Supreme Court held that application of the due process clauses of the California Constitution 'must be determined in the context of the individual's due process liberty interest in freedom from arbitrary adjudicative procedures. Thus, when a person is deprived of a statutorily conferred benefit, due process analysis must start not with a judicial attempt to decide whether the statute has created an "entitlement" that can be defined as "liberty" or "property," but with an assessment of what procedural protections are constitutionally required in light of the governmental and private interests at stake.' [Citations.] ██ The *Ramirez* court instructed the state courts to ' "evaluate the extent to which procedural protections can be tailored to promote more accurate and reliable administrative decisions in light of the governmental and private interests at stake" rather than relying "on whether or not the state limits administrative control over a statutory benefit or deprivation by the occurrence of specified conditions. . . ." ' [Citation.] The *Ramirez* court further held that 'the due process safeguards required for protection of an individual's statutory interests must be analyzed in the context of the principle ʻthat freedom from arbitrary adjudicative procedures is a substantive element of one's liberty. [Citation.] This approach presumes that when an individual is subjected to deprivatory governmental action, he always has a due process liberty interest both in fair and unprejudicial decision-making and in being treated with respect and dignity.' (*Id.* at p. 268.) [Fns. omitted.]" (*Ryan v. California Interscholastic Federation-San Diego Section, supra,* 94 Cal.App.4th at pp. 1069–1070.)

██ "Although under the state due process analysis an aggrieved party need not establish a protected property interest, the claimant must nevertheless identify a statutorily conferred benefit or interest of which he or she has been deprived to trigger procedural due process under the California Constitution and the *Ramirez* analysis of what procedure is due. [Citations.] The 'requirement of a statutorily conferred benefit limits the universe of potential due process claims: presumably not every citizen adversely affected by governmental action can assert due process rights; identification of a statutory benefit subject to deprivation is a prerequisite.' [Citation.]

██ "Once triggered, ' "[u]nder the California Constitution, the extent to which procedural due process is available depends on a weighing of private and governmental interests involved. The required procedural safeguards are

those that will, without unduly burdening the government, maximize the accuracy of the resulting decision and respect the dignity of the individual subjected to the decisionmaking process. Specifically, . . . determination of the dictates of due process generally requires consideration of four factors: the private interest that will be affected by the individual action; the risk of an erroneous deprivation of this interest through the procedures used and the probable value, if any, of additional or substitute safeguards; the dignitary interest of informing individuals of the nature, grounds and consequences of the action and of enabling them to present their side of the story before a responsible governmental official; and the government interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail. [Citations.]" ' [Citations.] Comparatively, other than the addition of the dignity factor, the *Ramirez* balancing test for determining what procedural protections are warranted, given the governmental and private interests involved, is essentially identical to that employed under the federal analysis. [Citations.]

██ "What safeguards comport with due process or what due process requires under specific circumstances varies, as not every context to which the right to procedural due process applies requires the same procedure. The primary purpose of procedural due process is to provide affected parties with the right to be heard at a meaningful time and in a meaningful manner. Consequently, due process is a flexible concept, as the characteristic of elasticity is required in order to tailor the process to the particular need. [Citations.] Thus, not every situation requires a formal hearing accompanied by the full rights of confrontation and cross-examination. [Citation.] 'What due process does require is notice reasonably calculated to apprise interested parties of the pendency of the action affecting their property interest and an opportunity to present their objections. [Citation.] " 'Due process' is an elusive concept. Its exact boundaries are undefinable, and its content varies according to specific factual contexts." [Citation.] The extent to which due process protections are available depends on a careful balancing of the interests at stake. [Citations.] In some instances, "due process may require only that the administrative agency comply with the statutory limitations on its authority." [Citation.]' [Citation.]" (*Ryan v. California Interscholastic Federation-San Diego Section, supra,* 94 Cal.App.4th at pp. 1071–1072.)

██ The first of the *Ramirez* factors is the private interest at stake. The Department denies that any private interest cognizable under the federal or state due process clauses is affected by the "exemption needed" letters. However, it is beyond dispute that both these clauses "protect[] the pursuit of one's profession from abridgment by arbitrary state action." (*Endler v. Schutzbank* (1968) 68 Cal.2d 162, 169 [65 Cal.Rptr. 297, 436 P.2d 297]; see *Oberholzer v. Commission on Judicial Performance* (1999) 20 Cal.4th 371, 390–391 [84 Cal.Rptr.2d 466, 975 P.2d 663]; see also *Ryan v. California*

*Interscholastic Federation-San Diego Section, supra,* 94 Cal.App.4th at p. 1074.) The constitutional interest at stake has been acknowledged in circumstances analogous to those before us. In *Purifoy v. State Board of Education* (1973) 30 Cal.App.3d 187 [106 Cal.Rptr. 201], the court recognized the due process rights of a public school teacher whose teaching credential was summarily suspended after he was convicted of a sex offense, though it concluded the teacher had received all the process to which he was due in the underlying criminal proceedings. (*Id.* at pp. 189–190, 195.)

The Department also relies on the due process granted in criminal prosecutions to the individuals affected by its "exemption needed" letters. This case differs from *Purifoy,* however, in that the convictions at issue do not necessarily bar the individual from employment or Trustline registration. The Legislature has seen fit to authorize the Department to grant exemptions. The Department's exercise of its discretion in this regard is subject to review to ensure that an appropriate level of due process is provided in the administrative process. (*Saleeby v. State Bar* (1985) 39 Cal.3d 547, 563–565 [216 Cal.Rptr. 367, 702 P.2d 525].)

The second *Ramirez* factor we must consider is the risk of an erroneous deprivation of the interest in obtaining an exemption and the probable value, if any, of additional or substitute safeguards. The additional safeguard sought by Gresher is specific notice of the convictions the employee or Trustline applicant must address in an application for an exemption. The Department claims its notices sufficiently guard against the risk of erroneous deprivation by informing recipients how to seek an exemption and how to obtain a copy of their criminal record. The Department also emphasizes the subsequent levels of process afforded to the affected individuals, including notice of the Department's decision on their exemption request and the opportunity to seek administrative and ultimately judicial review of the final decision. The Department contends the exemption process is part of an investigatory function, not a quasi-judicial function, and as such is subject to reduced due process scrutiny.

Accepting for purposes of argument that the exemption process is investigatory rather than adjudicatory, we take note of our Supreme Court's evaluation of the due process appropriate to a factfinding process in *Oberholzer v. Commission on Judicial Performance, supra,* 20 Cal.4th 371. The high court concluded no additional safeguards were required in the proceedings leading to an advisory letter sent to a judge as a form of discipline, where the procedures "provided petitioner with sufficient notice of the Commission's inquiry, *specifically identified the focus of, and evidentiary basis for, the Commission's investigation,* and granted petitioner sufficient opportunities to address the Commission's concerns and defend himself

against the allegation that he had acted improperly." (*Id.* at p. 393, italics added.) Here, of course, the Department does not specifically identify the convictions that recipients of the "exemption needed" letters are required to explain in an exemption request. The recipients are invited to write to the Department of Justice to obtain a copy of their criminal record, but the sufficiency of this opportunity is questionable, given the short time frame for requesting an exemption. The Department did not dispute Gresher's showing that it took at least six to eight weeks for the Department of Justice to provide arrest record information, after receiving fingerprints and record review forms from the individual.

The Department also conceded that "on rare occasions" there were errors in the criminal record information it received from the Department of Justice. The Department admitted it had developed a form letter for use in such cases of error. It disputed Gresher's factual showing that persons seeking exemptions had been confused by the "non specific" nature of the "exemption needed" letter, and uncertain what they should discuss in their request. However, it acknowledged that the coordinator of a legal services program had provided a declaration stating he had advised over 300 persons who received "exemption needed" letters from the Department, the majority of whom were confused about their conviction history, particularly when the incidents were old or involved only a short jail term.

The "probable value" of the additional safeguard sought by Gresher providing recipients with specific notice of the convictions they must address to obtain an exemption is not difficult to discern. Errors in conviction records could be addressed immediately, and any confusion over the events for which the Department demands an explanation would be greatly reduced. Indeed, the practical value of more specific notice is irrefutably established by the Department's implicit concession that recipients of "exemption needed" letters are ordinarily unable to obtain an arrest record from the Department of Justice within the time period allowed for requesting an exemption.

The third *Ramirez* factor is the "dignitary interest in informing individuals of the nature, grounds and consequences of the action and in enabling them to present their side of the story before a responsible governmental official." (*People v. Ramirez, supra,* 25 Cal.3d at p. 269.) The Department does not address this factor in its brief, but it is pertinent to the issue before us. The *Ramirez* court stated that "even in cases in which the decision-making procedure will not alter the outcome of governmental action, due process may nevertheless require that certain procedural protections be granted the individual in order to protect important dignitary values, or, in other words, 'to ensure that the method of interaction itself is fair in terms of what are perceived as minimum standards of political accountability . . . .' " (*Ramirez, supra,* 25 Cal.3d at p. 268.)

In our view, significant dignitary concerns are raised by a procedure in which the state informs persons only that it has received unspecified "criminal history" about them, and then requires a detailed explanation of each conviction as a condition of considering an exemption request. Notice sufficient to enable a meaningful response is an indispensable element of due process. (*Rosenblit v. Superior Court* (1991) 231 Cal.App.3d 1434, 1445 [282 Cal.Rptr. 819]; 7 Witkin, Summary of Cal. Law (9th ed. 1988) Constitutional Law, § 518, pp. 715–716.) The Department's failure to provide adequate information about what must be addressed in an exemption request offends our constitutional traditions.

The final *Ramirez* factor is the government interest at stake, including the fiscal and administrative burdens that the additional procedural requirements would entail. The Department contends, as it did below, that specifically listing convictions in the "exemption needed" notice would conflict with "the State's interest in maintaining the privacy of criminal history information," and "significantly burden the Department by forcing it to change its procedures and redirect personnel from other exemption related duties." These justifications are notably absent from the trial court's statement of decision, which may be an indication of their persuasive value. The trial court instead mentioned the governmental interest in protecting the vulnerable populations in community care facilities. However, providing more specific notice to applicants for exemptions would not impinge on this interest; the Department's discretion to deny exemptions in all appropriate cases would be unaffected.

The Department can assert no legitimate privacy interest in keeping criminal history information from convicted persons themselves. That information need not be provided to the licensee employer.[6] But it is crucially important to the affected person, in order to decide whether to seek an exemption, and if so how to go about explaining his or her record to the Department. It is difficult to imagine that the administrative burden of providing this information would outweigh the obvious benefits flowing from increasing the openness and efficiency of the exemption process. A Department employee must review a person's criminal record before sending out the "exemption needed" notice. The entire "rap sheet" need not be transcribed; simply including the nature and date of the disqualifying conviction or convictions in the notice sent to the individual would not be a crippling administrative burden.

---

[6] The Department refers us to Penal Code section 11149.3 as an example of the "highly confidential" treatment given to criminal history information. However, that provision, which applies to contractors who conduct national criminal record searches for the Department, only criminalizes the "knowing" disclosure of criminal records by contractors "to a person who is not authorized by law to receive the record." The Department does not argue that an individual is not authorized to receive his or her own criminal record.

 In sum, balancing the *Ramirez* factors leads us to conclude that due process requires the Department to tell individuals what convictions they must address to obtain an exemption. The private interest in a fair exemption process is substantial; the probable value of including specific conviction information is high, considering the risk of erroneous deprivation of employment opportunities through mistake or confusion; the dignitary interests of both the affected individuals and the Department militate in favor of a process that permits the individual to obtain the information necessary to respond meaningfully within the time allotted for doing so; and the governmental interest in keeping the conviction information to itself is nonexistent, while the administrative burden of disclosure is minimal.

## 5. *The Trustline Closure Policy*

Gresher's third summary adjudication motion addressed the Department's policy of closing Trustline applications from persons in diversion and deferred entry of judgment programs. The Department also sought summary adjudication of this claim in its own motion. The Department relied on section 1596.605, subdivision (b)(1), which requires that "[b]efore approving the person's application, the department shall check the individual criminal history pursuant to Section 1596.871." Section 1596.871, subdivision (a)(4)(B) provides: "If the State Department of Social Services finds that the applicant . . . is awaiting trial for a crime other than a minor traffic violation, the State Department of Social Services may cease processing the application until the conclusion of trial." The Department took the position that persons in diversion and deferred entry of judgment programs are "awaiting trial" within the meaning of section 1596.871, subdivision (a)(4)(B).

Gresher contended (1) section 1596.605, subdivision (b)(1) requires the Department to grant the Trustline application "upon completion" of the criminal history check unless there are grounds for denial under section 1596.607, which makes no provision for closing applications; (2) even if section 1596.871, subdivision (a)(4)(B) applies to Trustline applicants, persons in diversion and deferred entry of judgment programs are not "awaiting trial"; and (3) the Trustline closure policy violates equal protection guarantees by denying persons in diversion and deferred entry of judgment programs the opportunity to have their applications considered, an opportunity the Department afforded to persons who are convicted of a crime.

The court granted summary adjudication to the Department, agreeing with the Department's interpretation of the statutes and rejecting Gresher's equal protection claim.

██ The parties renew their claims on appeal. We agree with the Department that it may close the application process for persons who are "awaiting trial" under section 1596.871, subdivision (a)(4)(B). Gresher's interpretation of the statutes is not entirely unreasonable. However, we believe the terms of section 1596.605, subdivision (b)(1), requiring the Department to either grant the application or deny it on the grounds specified in section 1596.607 "upon completion" of the criminal history check, leaves room for the Department to "cease processing the application until the conclusion of the trial" under section 1596.871, subdivision (a)(4)(B). When the Department finds an applicant is "awaiting trial," the process of checking that person's criminal history may be deemed incomplete for purposes of section 1596.605, subdivision (b)(1). It makes little sense to require the Department to grant Trustline registrations to those who are soon to be ineligible (unless they obtain an exemption).

On the other hand, we cannot agree with the Department's position that persons in diversion and deferred entry of judgment programs are "awaiting trial." The purpose of those programs is precisely to *avoid* the necessity of a trial. The Department points out that persons charged with certain child molestation, sexual abuse, and narcotics offenses are eligible for deferred entry of judgment programs. However, those offenders are required to plead guilty as a condition of participating in the program. (Pen. Code, §§ 1000.1, subd. (a)(3), 1000.12, subd. (c)(1).) ██ A guilty plea amounts to a conviction for purposes of section 1596.871, so the Department may simply deny Trustline registration to offenders in these programs. (§ 1596.871, subd. (d)(1).)

██ Pretrial diversion is "the procedure of postponing prosecution of an offense . . . either temporarily or permanently at any point in the judicial process from the point at which the accused is charged until adjudication." (Pen. Code, § 1001.1; see also §§ 1001.50, subd. (c), 1001.70, subd. (b).) Charges are dismissed upon satisfactory performance in the program; a hearing and a showing of cause is required for the program to be terminated. (Pen. Code, §§ 1000.3, 1000.4, 1001.54.) Given that a trial is not contemplated without first holding a termination hearing, which is itself contingent on the person's performance, it cannot reasonably be said that persons in diversion programs are "awaiting trial."

The Department suggests it is absurd to think the Legislature intended to permit Trustline registration of persons with pending criminal charges. However, the "awaiting trial" provision of section 1596.871, subdivision (a)(4)(B) applies in the community care facility context only to those criminal record

checks conducted before granting a license or special permit to operate the facility. While we have construed this provision to apply also to the initial registration of Trustline providers, we note the Legislature made no provision for suspending the application process for persons "awaiting trial" when they apply for employment at an already licensed community care facility, or for revoking the existing registration of a Trustline provider who is "awaiting trial." (§§ 1596.871, subd. (c), 1596.608.) Given the limited scope of the "awaiting trial" exception, we are not persuaded by the Department's effort to stretch the exception beyond the plain meaning of the statutory language.

■ We emphasize that the Department is authorized to deny the applications of those who plead guilty to serious offenses as a condition of entry into a deferred entry of judgment program. If such a guilty plea is eventually set aside upon successful completion of the program, the person may, of course, file a new application for Trustline registration.

6. *The "Exemption Denied" Notice*

■ Gresher's first summary adjudication motion challenged the Department's "exemption denied" notices, contending they violated the governing statutes and constitutional guarantees of due process. The statutes provide that a person excluded from a community care facility due to the Department's denial of an exemption request "shall be given written notice of the basis of the department's action and of the excluded person's right to an appeal." (§§ 1558, subd. (b), 1569.58, subd. (b), 1596.8897, subd. (b); see also § 1568.092, subd. (b).) The same requirement applies when the Department denies an exemption to a Trustline applicant. (§§ 1596.607, subd. (a), 1596.871, subd. (f)(2).) Gresher complained that the Department failed to provide notice of the "basis" of its action, because its "exemption denied" notices merely stated: "To justify granting an exemption, the Department must have substantial and convincing evidence to support a reasonable belief that the person is of good character. The information provided with the request did not convince us that this standard was met."

The Department conceded that "this explanation for the denial of exemption is broad," but contended "the statute does <u>not</u> require an individualized written decision at this stage." (Underscoring in original.) The Department characterized the denial of an exemption request as a "preliminary decision," which became final only if the affected person did not appeal. It noted that anyone who did appeal would receive "a pleading detailing the allegations," full administrative hearing rights, and a written decision with specific findings "which [the Department] either accepts or rejects as its final decision."

The court ruled that the "exemption denied" notice complied with the statutory requirements. We cannot agree with such a stunted interpretation of the notice requirement. Simply informing an applicant that the statutory standard for an exemption has not been met is a conclusory statement of the Department's determination that does not qualify as "notice of the basis of the department's action." The Legislature's placement of this notification requirement in the same sentence as the requirement to notify the applicant of the right to an appeal strongly suggests the Legislature intended to permit the applicant to make an *informed* decision on whether to pursue an appeal. A form letter advising applicants that the information they submitted was inadequate to justify an exemption hardly serves this purpose. (See *Crandell v. Fox* (1978) 86 Cal.App.3d 760, 764–765 [150 Cal.Rptr. 426].)

The Department considers a wide range of factors in the exemption evaluation process. (Cal. Code Regs., tit. 22, §§ 80019.1(e)–(n), 87819.1(e)–(n), 101170.1(e)–(n), 102370.1(e)–(n).) For its own purposes, it keeps a written record of the reasons for granting or denying an exemption. (Cal. Code Regs., tit. 22, §§ 80019.1(h), 87819.1(h), 101170.1(h), 102370.1(f).) The Department is not required to provide the same record to the applicant, but it must briefly explain the basis of its decision in terms specific enough to allow the applicant to make a reasonably informed decision on whether to appeal. This interpretation of the statute gives a functional meaning to the term "basis of the department's action," without creating an undue administrative burden for the Department.

We recognize that the initial denial of an exemption is only part of an administrative process including a broad array of procedural protections at later stages. However, the Department's interpretation of the governing statutes to permit it to avoid any disclosure of the specific grounds for requiring or deciding on an exemption until the administrative appeal stage is unusual, to say the least. The Department refers us to no similar scheme. We note that when the Legislature decided in 1995 to authorize agencies to promulgate regulations facilitating emergency action to protect the public, motivated at least partly by concerns about the vulnerable populations in community care facilities, it required at a minimum that an emergency decision "includ[e] a brief explanation of the factual and legal basis and reasons for the emergency decision, to justify the determination of an immediate danger and the agency's emergency decision to take the specific action." (Gov. Code, § 11460.50, subd. (a); 25 Cal. Law Revision Com. Rep. (1995) 55, 112–113; see 9 Witkin, Cal. Procedure (4th ed. 1997) Administrative Proceedings, § 64 et seq., p. 1115 et seq.) Like the initial determination on an exemption, the emergency decision is followed by an adjudicative proceeding. (Gov. Code, § 11460.60.)

We see no reason to believe the Legislature intended to permit the Department to provide only a generalized statement of the basis for its decision on an exemption request. Such a decision is not an emergency determination, but one made after a deliberative process that includes the compilation of written reasons for the decision.

*7. Mandamus Is an Available Remedy*

Finally, the Department challenges in cursory fashion Gresher's right to compel it to change its procedures. First, it contends its procedures violate no statutory or constitutional duties. We have decided otherwise.[7] Next, the Department argues Gresher has no stake in the process sufficient to give him the right to seek relief in mandamus. Gresher accurately responds that the Department failed to raise any standing arguments in its motion papers below. However, the standing issue may be raised at any time. (*Common Cause v. Board of Supervisors*, *supra*, 49 Cal.3d at p. 438.)

We are satisfied that Gresher has standing as a citizen-taxpayer to compel the Department to perform its public duties in the exemption process. (*Green v. Obledo* (1981) 29 Cal.3d 126, 144–145 [172 Cal.Rptr. 206, 624 P.2d 256]; *Common Cause v. Board of Supervisors*, *supra*, 49 Cal.3d at p. 439.) Certainly, Gresher's determined pursuit of this litigation is consistent with the purpose of the standing requirement, which is to ensure an actual controversy between parties with sufficient adverse interests to press their case with vigor. If anything, this matter has been overlitigated; we see no danger of being misled by the parties' failure to adequately argue the issues. (*Connerly v. State Personnel Bd.*, *supra*, 92 Cal.App.4th 16, 30.)

## DISPOSITION

The judgment is reversed. The trial court is directed to issue a writ of mandate directing the Department to: (1) permit certified family home employees to seek exemptions on their own behalf; (2) permit terminated employees to seek exemptions after their employers receive notice of criminal history, without requiring that the notification have caused the termination;

---

[7] We note our ruling requires only that the Department perform ministerial duties imposed by statute or due process, without directing the Department to exercise its discretion in any particular manner. (*Common Cause v. Board of Supervisors* (1989) 49 Cal.3d 432, 442 [261 Cal.Rptr. 574, 777 P.2d 610].)

(3) include in the "exemption needed" notice information specifying the convictions to be addressed in an exemption request; (4) stop closing Trustline applications from persons in deferred judgment or pretrial diversion programs; and (5) notify persons denied an exemption of the basis for the denial in terms sufficiently specific to permit a reasonably informed decision on whether to pursue an administrative appeal.

Gresher shall recover his costs on appeal.

Corrigan, Acting P. J., and Pollak, J., concurred.