[No. A105364. First Dist., Div. Three. June 22, 2006.]

JANE DOE et al., Plaintiffs and Respondents, v.
RITA SAENZ, as Director, etc., et al., Defendants and Appellants.

[Nos. A105870, A107142. First Dist., Div. Three. June 22, 2006.]

MARY GLESMANN et al., Plaintiffs and Respondents, v.
RITA SAENZ, as Director, etc., at al., Defendants and Appellants.

## COUNSEL

Bill Lockyer, Attorney General, Teresa Stinson, Douglas M. Press and Susan Joyce King, Deputy Attorneys General, for Defendants and Appellants.

The Social Justice Law Project and Peter Sheehan for Plaintiffs and Respondents.

## Opinion

**McGUINESS, P. J.**—Persons convicted of crimes other than minor traffic offenses are presumptively disqualified from working in licensed community care facilities, which provide care and services to people such as the disabled, the elderly, and foster children. (See generally Health & Saf. Code, §§ 1502, subd. (a), 1522, subd. (c)(3).)[1] The Director of the Department of Social Services has discretion to allow persons convicted of certain offenses to work in community care facilities, although the director has no discretion to grant such a criminal record exemption to persons convicted of specified "non-exemptible" offenses. (See, e.g., § 1522, subd. (g)(1).)

These consolidated appeals arise out of actions against the Department of Social Services and several of its directors (collectively, the Department) challenging the Department's classification of certain crimes as non-exemptible offenses. Included among offenses considered non-exemptible are "crime[s] against an individual" specified in Penal Code section 667.5, subdivision (c) (hereafter Penal Code section 667.5(c)). (See, e.g., § 1522, subd. (g)(1)(A)(i).) After Proposition 21 passed in 2000, the list of violent felonies in Penal Code section 667.5(c) was expanded to include, among other crimes, first degree burglary with a nonaccomplice present, an offense we shall refer to as occupied burglary. (Pen. Code, § 667.5, subd. (c)(21).) The trial court held that the Department may not treat occupied burglary as a non-exemptible offense, reasoning it is not a crime against an individual.

Unquestionably, occupied burglary is a crime involving a potential for violence, justifying an enhanced sentence under Penal Code section 667.5 for habitual offenders who commit that crime. However, a potential for violence does not transform the offense into a crime against an individual, which generally requires the use of force or an expressed threat to use force or inflict harm. A defendant may be convicted of occupied burglary even though the defendant believed the dwelling was unoccupied and had no contact with the occupant during the burglary. Accordingly, even though occupied burglary creates a potential for violence and merits more severe punishment for habitual criminals, we agree with the trial court that occupied burglary is not a crime against an individual for purposes of determining whether an applicant may seek a criminal record exemption to work in a community care facility.

---

[1] All further statutory references are to the Health and Safety Code unless otherwise specified.

The trial court also held that the Department's method of notifying persons it concludes have been convicted of non-exemptible offenses violates constitutional due process guarantees, and it held that the Department's policy of treating a second degree robbery conviction as a non-exemptible offense even though the convicted person has obtained a certificate of rehabilitation violates equal protection principles. We affirm the judgment.

## STATUTORY AND REGULATORY FRAMEWORK

The Department regulates and licenses community care facilities such as residential group homes, adult day care facilities, foster family agencies, and foster child facilities. (§ 1502, subd. (a).) The Department is also responsible for regulating and licensing other categories of care facilities governed by separate statutory provisions, including residential care facilities for the chronically ill (§ 1568.01 et seq.), residential care for the elderly (§ 1569 et seq.), and child care facilities (§ 1596.76 et seq.). For ease of reference we refer collectively to all of these facilities as community care facilities.[2]

The Department also maintains a "trustline" registry of persons who provide child care in an unlicensed home setting. (§ 1596.60 et seq.) Trustline registers child care providers who pass criminal record and child abuse background screening, and it makes available a registry for parents and agencies to determine if a child care provider such as a babysitter or nanny has satisfied the registry's screening requirements. The trustline registration process incorporates the criminal record exemption procedures applied to licensed child care facilities. (§§ 1596.605, subd. (b)(1), 1596.607, subd. (a)(1).)

Four similar criminal record exemption statutes (collectively, the exemption statutes) establish procedures for screening applicants who seek to operate, work, or be present in each of four different types of community care facilities. (See generally §§ 1522 [community care facilities], 1568.09 [residential care facilities], 1569.17 [elderly residential care], and 1596.871 [child care facilities].) Before any person may register as a trustline provider or operate, work, or be present in a licensed community care facility, that person

---

[2] "Community care facility" is defined in section 1502, subdivision (a) to include 12 specified types of facilities. We have adopted the parties' broader usage of the term to encompass all care facilities regulated by the Department that have similar criminal record exemption requirements for persons seeking to operate, work in, or be present in the regulated facility.

must obtain either a criminal record clearance or, if convicted, must apply for and obtain a criminal record exemption from the Department. (§§ 1522, subd. (a), 1568.09, subd. (a), 1569.17, subd. (a), 1596.871, subd. (a)(1); see also §§ 1596.605, subd. (b)(1) & 1596.607, subd. (a) [applying procedures in section 1596.871 to trustline applicants].)

The director has discretion to grant a criminal record exemption for persons convicted of certain crimes (exemptible offenses). (See generally §§ 1522, subd. (g)(1), 1568.09, subd. (f)(1), 1569.17, subd. (f)(1), 1596.871, subd. (f)(1) [setting forth general rule that person convicted of crime may seek exemption subject to exceptions].) However, the director has no discretion to grant an exemption for persons convicted of designated crimes (non-exemptible offenses), including offenses such as sexual battery, certain crimes affecting children or the elderly, and a "conviction of another crime against an individual specified in subdivision (c) of Section 667.5 of the Penal Code."[3] (§§ 1522, subd. (g)(1)(A)(i), 1568.09, subd. (f)(1)(A), 1569.17, subd. (f)(1)(A), 1596.871, subd. (f)(1)(A).) All four of the exemption statutes contain identical language defining as non-exemptible offenses "crime[s] against an individual" listed in Penal Code section 667.5(c).

■ Penal Code section 667.5 is a sentence enhancement statute that requires the imposition of an additional term for habitual criminals convicted of violent felonies who have served a prior prison term for a violent felony. Subdivision (c) of Penal Code section 667.5 defines "violent felony" as one of 23 enumerated offenses. Before Proposition 21 passed in 2000, Penal Code section 667.5(c) enumerated 19 offenses as violent felonies, a list that did not include second degree robbery or any form of burglary. (Former Pen. Code, § 667.5(c), as amended by Stats. 1997, ch. 504, § 2.) After the passage of Proposition 21, however, the list of violent felonies in Penal Code section 667.5(c) was expanded to include any robbery and what we refer to as "occupied burglary," defined as first degree burglary when it is charged and proved that a person other than an accomplice was present in the residence during the commission of the burglary. (Pen. Code, § 667.5(c)(9) & (21).) Although a burglary of an "inhabited dwelling house" qualifies as a first

---

[3] Subdivision (g)(1) of section 1522 provides in pertinent part, "Except as otherwise provided in this subdivision, an exemption may not be granted pursuant to this subdivision if the conviction was for any of the following offenses: [¶] (A)(i) An offense specified in Section 220, 243.4, or 264.1, subdivision (a) of Section 273a or, prior to January 1, 1994, paragraph (1) of Section 273a, Section 273d, 288, or 289, subdivision (a) of Section 290, or Section 368 of the Penal Code, or was a conviction of another crime against an individual specified in subdivision (c) of Section 667.5 of the Penal Code." The other three exemption statutes designate these same crimes as offenses for which an exemption may not be granted. (See §§ 1568.09, subd. (f)(1)(A), 1569.17, subd. (f)(1)(A), 1596.871, subd. (f)(1)(A).)

degree burglary (Pen. Code, § 460, subd. (a)), "inhabited" as used in the statute simply means the building is "currently being used for dwelling purposes, whether occupied or not." (Pen. Code, § 459.) Thus, a conviction for first degree burglary does not necessarily qualify as an "occupied burglary" as defined in Penal Code section 667.5, subdivision (c)(21).

One of the issues raised in these consolidated appeals is whether the reference in the criminal record exemption statutes to Penal Code section 667.5(c) was intended to designate all or merely a subset of the violent felonies listed in that statute as non-exemptible offenses. The Department contends all crimes listed in Penal Code section 667.5(c) are non-exemptible, while respondents assert that only certain crimes listed in that subdivision are non-exemptible. More specifically, respondents contend that occupied burglary is not a non-exemptible offense, because it is not a "crime against an individual" and was added to Penal Code section 667.5(c) only after the Legislature had defined non-exemptible offenses by reference to an earlier version of that subdivision.

Although specified crimes are considered non-exemptible, an applicant who has suffered a non-exemptible conviction may, under certain circumstances, seek an exemption. In particular, section 1522 provides that a person convicted of specific non-exemptible offenses may seek an exemption if the person has obtained a certificate of rehabilitation. (§ 1522, subd. (g)(1)(A)(ii).) To obtain a certificate of rehabilitation, a convicted criminal must complete his or her sentence and period of parole, remain a resident of the state for a specified period with no further violations of the law, demonstrate good conduct, and satisfy other statutory requirements. (Pen. Code, §§ 4852.01, 4852.03, 4852.05, 4852.06.) The provision permitting certain offenders who have received a certificate of rehabilitation to seek an exemption applies to persons convicted of murder, mayhem, any felony punishable by death or life imprisonment, any armed felony, or a felony in which great bodily harm is inflicted, among other crimes. (§ 1522, subd. (g)(1)(A)(ii); Pen. Code, § 667.5, subd. (c)(1), (2), (7), (8).)

The exemption process afforded by section 1522, subdivision (g)(1)(A)(ii) has obvious restrictions. It is of course limited to specified offenses and is available only to those who have obtained a certificate of rehabilitation. And it is found in just one of the four exemption statutes, so that only applicants seeking to work in one of the facilities defined in section 1502, subdivision (a) may apply for the exemption. (Compare § 1522, subd. (g)(1) with §§ 1568.09, subd. (f)(1), 1569.17, subd. (f)(1), & 1596.871, subd. (f)(1).) In any event, the

Department claims that the director rarely grants exemptions for persons convicted of non-exemptible offenses who have obtained certificates of rehabilitation.

■ An applicant seeking to operate or work in a community care facility must submit his or her fingerprints to the Department of Justice and disclose any criminal convictions. (§§ 1522, subd. (c)(1), 1568.09, subd. (c)(1)(A), 1569.17, subd. (c)(1)(A), 1596.603, subd. (a), 1596.871, subd. (c)(1)(A); Cal. Code Regs., tit. 22, §§ 80019, subd. (d), 87219, subd. (d), 101170, subd. (d), 102370, subd. (c).) The Department receives criminal rap sheets from the California Department of Justice and Federal Bureau of Investigation identifying the applicant's criminal history. The Department and at least 42 counties use these records, along with court documents and information from the applicant's self-disclosure form, to determine if a person is eligible for a criminal record exemption.

Department staff complete an "exemption decision worksheet" that lists the reasons for a non-exemptible determination. After making a non-exemptible determination, the Department attempts to contact the licensee facility by telephone to specify that the applicant was convicted of a non-exemptible crime and must be immediately excluded from the facility. The Department then sends a non-exemptible notification letter to the applicant by certified mail. The licensee receives a separate notification letter. The notification letter specifies that the applicant has been convicted of an unspecified offense for which the Department cannot grant an exemption, that the person cannot work or have contact with community care clients, and that an appeal of the determination must be taken within 15 days of the date of the notice. The notice informs the applicant how to obtain a copy of his or her rap sheet from the Department of Justice. If an applicant timely appeals, he or she is entitled to an administrative hearing conducted in accordance with section 11500 et seq. of the Government Code. (§§ 1558, subd. (e), 1568.092, subd. (e), 1569.58, subd. (e), 1596.8897, subd. (e).)

Two manuals and a list of non-exemptible offenses prepared by the Department establish the standards and procedures to follow in cases involving non-exemptible offenses. The non-exemptible list refers to more than 50 offenses and classes of offenses, some of which are non-exemptible only under particular conditions. The documents distributed to the Department's staff and the counties do not specify any standard to apply in evaluating federal and out-of-state convictions. Nevertheless, the Department has disqualified applicants based on federal and out-of-state non-exemptible convictions.

The number of non-exemptible notices sent each fiscal year over the period from 1999 through 2002 varied from a low of 336 to a high of 929. Considerably fewer non-exemptible notices are sent each year than exemption-needed letters, which are provided to applicants convicted of exemptible offenses who are eligible to seek an exemption. For example, during the 2000–2001 fiscal year, the Department sent approximately 2,084 exemption-needed letters to trustline applicants and providers, and approximately 14,020 exemption-needed letters to community care facilities and employees.

■ A non-exemptible determination results in a lifetime ban from working in any community care facility.[4] (§§ 1558, subd. (h), 1568.092, subd. (h), 1569.58, subd. (h), 1596.8897, subd. (h).) Under the statutory scheme, there is no provision for reemployment or payment of lost wages even if an individual eventually succeeds in demonstrating that the Department erred in determining that a person was convicted of a non-exemptible offense. (See §§ 1522, subd. (j), 1568.09, subd. (h), 1569.17, subd. (h) [providing that employer shall incur no civil liability or unemployment liability as result of denial or termination of employment based on Department notification].)

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs Mary Glesmann and Jane Doe 1[5] filed an action for injunctive and declaratory relief and for a writ of mandate against the Director of the Department and the Director of the Department's Community Care Licensing Division, challenging certain criminal record exemption procedures. Before the operative first amended complaint was filed, plaintiff Mary Glesmann dismissed all of her claims against the defendants without prejudice.

Jane Doe 1 (the Glesmann plaintiff)[6] was convicted of first degree burglary in 1989. She obtained a criminal record exemption from the Department in 1990 and worked for approximately 10 years at community care facilities.

---

[4] An excluded individual may petition the Department for reinstatement after one year. (§§ 1558, subd. (h)(1)(B), 1568.092, subd. (h)(1)(B), 1569.58, subd. (h)(1)(B), 1596.8897, subd. (h)(1)(B).) In the case of a non-exemptible determination, the right to petition for reinstatement presumably is meaningful only if the Department initially erred in concluding an applicant was convicted of a non-exemptible offense.

[5] The Jane Doe in the Glesmann lawsuit was referred to as Jane Doe 1 in the trial court.

[6] Although Mary Glesmann had no further involvement in the action after dismissing her claims without prejudice, we refer to Jane Doe 1 as the "Glesmann plaintiff" to distinguish her from the Jane Doe in the other lawsuit giving rise to this appeal.

After Jane Doe 1 changed employers, the Department notified her new employer in 2000 that she needed to secure a new exemption to remain employed. The Department ultimately determined that she had been convicted of a non-exemptible offense, barring her from further employment in community care facilities.

Although Jane Doe 1 was convicted of first degree burglary, there was no allegation or proof that another person was present in the residence during the commission of the burglary (i.e., that she was convicted of "occupied burglary"). After Proposition 21 was passed, the Department began denying exemptions to some persons convicted of first degree burglary without making a determination that a nonaccomplice was actually present in the residence during the commission of the burglary. As a result of this practice, the Department erroneously found Doe 1 to have a conviction for a non-exemptible offense. During the course of the Glesmann lawsuit, the parties reached a settlement regarding notice to 82 individuals with convictions for first degree burglary who had been incorrectly notified by the Department that they had been convicted of a non-exemptible offense. As a consequence, Doe 1 was ultimately granted an exemption to work in a community care facility during the course of this litigation.

The Glesmann plaintiff claimed that the Department's practice of denying exemptions to persons convicted of first degree burglary violates equal protection, due process, and ex post facto provisions of the California and federal Constitutions. She contended that a person convicted of first degree burglary should be allowed to seek an exemption, and claimed that persons convicted of first degree burglary who had obtained a certificate of rehabilitation should be eligible to obtain a criminal record exemption. She also alleged that the Department's notification letter sent to persons the Department found ineligible to work in a community care facility violated due process because it did not list the disqualifying conviction or otherwise provide adequate notice or due process protections.

Plaintiffs Jane Doe 2[7] and Janet Coe (the Doe plaintiffs) filed an action for declaratory and injunctive relief and for a writ of mandate against the Chief of the Department's Caregiver Background Check Bureau in addition to the defendants named in the Glesmann action, challenging criminal record exemption procedures for persons seeking to be affiliated with a licensed community care facility. The Doe plaintiffs had both been convicted of robbery and made essentially the same claims as the Glesmann plaintiff.

---

[7] The Jane Doe in the Doe lawsuit was referred to as Jane Doe 2 in the trial court.

Jane Doe 2 was convicted of second degree robbery for an incident that occurred in 1988. She was not armed during the commission of the robbery. In 2000, she obtained a certificate of rehabilitation from the Sacramento County Superior Court. She began working in December 2000 as a social worker with a foster family agency. After the adoption of Proposition 21, the Department directed the immediate removal of Doe 2 from the foster family facility and permanently barred her from work in the community care field.

Janet Coe was convicted of robbery in 1972. She was unarmed during the robbery and had no other convictions over the past 30 years. In 2001, the Department determined that Coe's 30-year-old conviction for robbery permanently barred her from employment in the community care field.

After the parties reached a partial settlement in the Glesmann action, both cases were assigned to a single judge, and the parties agreed to a simultaneous briefing schedule for summary judgment motions in both actions. The parties filed a joint statement of stipulated facts and exhibits in support of those facts. The trial court granted plaintiffs' motions for summary judgment and denied defendants' motions.

The trial court granted declaratory and injunctive relief in both the Glesmann action and the Doe action. In the Glesmann action, the trial court found that occupied burglary as defined in subdivision (c)(21) of Penal Code section 667.5 is neither a non-exemptible offense nor a "crime against an individual" within the meaning of the exemption statutes. The court granted the petition for writ of mandate and enjoined the defendants from treating occupied burglary as a non-exemptible offense. The court expressly did not reach claims that treating occupied burglary as a non-exemptible offense violates equal protection principles, that the policy of treating occupied burglary as a non-exemptible offense when the convicted person has obtained a certificate of rehabilitation violates equal protection and due process guarantees, and that the Department's non-exemptible notice policy does not satisfy constitutional due process requirements.

In the Doe action, the trial court found that the Department's policy of treating second degree robbery as a non-exemptible offense when the convicted person has obtained a certificate of rehabilitation violates the equal protection guarantees of the California and federal Constitutions. The court also found that the Department's non-exemptible notification policy violates the due process guarantees of the California and federal Constitutions because the notice fails to identify the standards used in reaching the determination, the identity of documents relied upon, or the disqualifying conviction.

The court granted the petition for writ of mandate and enjoined the Department from treating second degree robbery convictions followed by a certificate of rehabilitation as non-exemptible offenses under section 1522. The court further enjoined the Department from failing to provide individuals who receive non-exemptible notifications with the standards used in reaching the determination, the identity of documents relied upon, and the conviction charge, and if known, the approximate date of the conviction and the court in which the applicant was convicted.

Defendants filed notices of appeal from the orders granting summary judgment in each action before entry of judgment.[8] We ordered the cases consolidated for all purposes. Subsequently, the trial court ordered the actions consolidated for purposes of judgment and postjudgment proceedings, and it issued a single judgment in both actions. Defendants then filed an appeal from the judgment. We ordered the later appeal of the judgment consolidated for all purposes with the earlier appeals of the separate summary judgment orders.

## DISCUSSION

We review a grant of summary judgment de novo. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 860 [107 Cal.Rptr.2d 841, 24 P.3d 493].)

1. *The Department incorrectly classifies "occupied burglary," as defined in Penal Code section 667.5(c)(21), as a non-exemptible offense.*

The trial court enjoined the Department from treating occupied burglary, added to Penal Code section 667.5(c) with the passage of Proposition 21, as a non-exemptible offense. The Glesmann plaintiff defends the trial court's ruling by offering a number of statutory arguments, which may be distilled into two categories.

In the first set of arguments, the Glesmann plaintiff contends the exemption statutes are specific reference statutes that do not automatically integrate changes to the incorporated statute, Penal Code section 667.5(c). Under this analysis, the incorporated statute is frozen in time as of the date the incorporating language was added to each of the exemption statutes. In the second set of arguments, the Glesmann plaintiff contends the incorporating language in the exemption statutes specifies that only those offenses in Penal Code section 667.5(c) that are crimes against individuals are to be considered non-exemptible, and that burglary is a property crime, not a crime against an individual.

---

[8] We treat the notices as having been filed immediately after entry of judgment. (Cal. Rules of Court, rule 2(e)(2).)

### a. *The incorporation of Penal Code section 667.5(c) into the exemption statutes is a general reference.*

■ Special rules of statutory interpretation govern how to apply a statute incorporating another statute that changes over time. In *Palermo v. Stockton Theatres, Inc.* (1948) 32 Cal.2d 53 [195 P.2d 1] (*Palermo*), our Supreme Court set forth a seemingly categorical rule: " 'It is a well established principle of statutory law that, where a statute adopts by specific reference the provisions of another statute, regulation, or ordinance, such provisions are incorporated in the form in which they exist at the time of the reference and not as subsequently modified . . . . [Citations.] [¶] . . . [¶] . . . [T]here is a cognate rule, recognized as applicable to many cases, to the effect that where the reference is general instead of specific, such as a reference to a system or body of laws or to the general law relating to the subject in hand, the referring statute takes the law or laws referred to not only in their contemporary form, but also as they may be changed from time to time . . . .' " (*Id.* at pp. 58–59.)

The Glesmann plaintiff contends the exemption statutes contain specific references because they refer to a particular section and subdivision of the Penal Code. Such a formulaic application of the *Palermo* rule is inappropriate, however, when the incorporating statute does "not make clear whether it contemplates only a time-specific incorporation . . . ." (*In re Jovan B.* (1993) 6 Cal.4th 801, 816 [25 Cal.Rptr.2d 428, 863 P.2d 673].) In such a case, the determining factor of whether a reference is specific or general is legislative intent in light of all relevant evidence. (*Ibid.*; see also *People v. Frawley* (2000) 82 Cal.App.4th 784, 794 [98 Cal.Rptr.2d 555] [*Palermo* rule not applied categorically]; *People v. Pecci* (1999) 72 Cal.App.4th 1500, 1505 [86 Cal.Rptr.2d 43] ["the *Palermo* rule is not to be applied in a vacuum. The determining factor is legislative intent"].)

In *Palermo*, the incorporating statute authorized certain leases with Japanese nationals if the lease was made in accordance with "any treaty now existing" between the United States and Japan. (*Palermo, supra*, 32 Cal.2d at p. 55.) The court held that the incorporating statute referred to the treaty as it existed when the incorporating statute was passed (i.e., "now existing"), not as the treaty was later amended or repealed. (*Id.* at p. 60.) Here, unlike in *Palermo*, the exemption statutes do not incorporate Penal Code section 667.5(c) in any time-specific way. Accordingly, we proceed to examine evidence of legislative intent concerning whether the reference is specific or general.

■ The starting point for determining legislative intent is the language of the statutes. ■ Each of the exemption statutes plainly defines as a non-exemptible offense a "conviction of another crime *against an individual* specified in subdivision (c) of Section 667.5 of the Penal Code." (§§ 1522, subd. (g)(1)(A)(i), 1568.09, subd. (f)(1)(A), 1569.17, subd. (f)(1)(A), and 1596.871, subd. (f)(1)(A), italics added.) Echoing this reference to crimes against an individual, Penal Code section 667.5(c) contains a declaration of intent that the Legislature "finds and declares that these specified crimes merit special consideration when imposing a sentence to display society's condemnation for these extraordinary crimes of violence *against the person.*" (Italics added.) All parties concede that "crime against an individual" is synonymous with "crime against the person." The fact the declaratory language in the incorporated statute parallels language in the incorporating statute suggests the cross-reference to Penal Code section 667.5(c) is not a specific adoption of the components of that subdivision as it existed as some fixed point in time, but is rather a reference to a general body of law setting forth violent crimes the Legislature has deemed particularly worthy of condemnation. (See *People v. Van Buren* (2001) 93 Cal.App.4th 875, 880 [113 Cal.Rptr.2d 510] [referring to Penal Code section 667.5(c) as critical element in *general body of law* concerning violent criminals], disapproved on other grounds in *People v. Mosby* (2004) 33 Cal.4th 353, 365, fn. 3 [15 Cal.Rptr.3d 262, 92 P.3d 841].)

Ultimately, if differing interpretations of the exemption statutes are possible, our task is to interpret the statutes in a workable and reasonable manner. (*Bell v. Farmers Ins. Exchange* (2001) 87 Cal.App.4th 805, 832 [105 Cal.Rptr.2d 59].) Practical considerations weigh heavily in favor of treating the exemption statutes as incorporating Penal Code section 667.5(c) as it evolves over time.

At least 18 different California statutes contain employment or licensing restrictions based on convictions contained in Penal Code section 667.5(c).[9] It is unlikely the Legislature intended to freeze the list of disqualifying offenses for each licensing statute based upon the version of Penal Code section 667.5(c) in effect at the time each statute's incorporating language was enacted. Otherwise, the list of disqualifying offenses would vary among

---

[9] In addition to the four exemption statutes, see sections 1524, subdivision (d), 1568.061, subdivision (d), 1569.19, subdivision (d), 1596.858, subdivision (d); Welfare & Institutions Code sections 4689.2, subdivision (f), 5405, subdivision (c)(1), 16501, subdivision (k)(1)(D); Education Code sections 33193, subdivision (d)(2), 44237, subdivision (h), 44332.6, subdivision (c), 44346.1, subdivision (c), 44830.1, subdivision (c)(1), 45122.1, subdivision (c)(1), 45125.2, subdivision (c).

licensing statutes based solely on the fortuitous timing of the incorporating statute's adoption.

In the case of the exemption statutes, the language incorporating Penal Code section 667.5(c) was added to the first exemption statute in 1983 (§ 1522) and to the remaining three exemption statutes in 1984 (§ 1596.871), 1985 (§ 1569.17), and 1990 (§ 1568.09). (See Stats. 1983, ch. 496, § 1, p. 2016; Stats. 1984, ch. 1615, § 9, p. 5746; Stats. 1985, ch. 1127, § 3, p. 3809; Stats 1990, ch. 1333, § 1.5, p. 5784.) Between 1983 and 1989, Penal Code section 667.5(c) was amended multiple times, modifying the definition of several violent felonies and adding four more offenses to the original list of eight. (Compare former Pen. Code, § 667.5(c), as amended by Stats. 1980, ch. 587, § 3, p. 1596, with former Pen. Code, § 667.5(c), as amended by Stats. 1989, ch. 1012, § 1, p. 3509.) If the list of offenses in Penal Code section 667.5(c) were incorporated into each exemption statute as that list existed on the date the cross-referencing language was adopted, for example, section 1522 would contain a list of non-exemptible offenses different from those in section 1568.09. Applying the statutes in this manner, persons convicted of certain crimes, such as attempted murder (see Pen. Code, § 667.5(c)(12)), could seek an exemption to work in residential care facilities for the chronically ill but would be banned for life from working in other community care facilities. We are unaware of any support in the language of the exemption statutes or in their legislative history for such a result, which is neither workable nor reasonable.

 We conclude the Legislature intended the cross-reference to Penal Code section 667.5(c) in the exemption statutes as a general reference that automatically incorporates changes that may be made to that subdivision over time. Accordingly, a crime added to Penal Code section 667.5(c) after enactment of the exemption statutes may qualify as a non-exemptible offense, provided it is "another crime against an individual specified" in that subdivision. (See, e.g., § 1522, subd. (g)(1)(A)(i).)

 b. *Only crimes against an individual listed in Penal Code section 667.5(c) are incorporated into the exemption statutes.*

The language in the exemption statutes incorporating Penal Code section 667.5(c) contains an important modifier—instead of incorporating *any* offense in section 667.5(c), the statutes incorporate "a conviction of another crime against an individual specified in subdivision (c) of Section 667.5 of the Penal Code." (§§ 1522, subd. (g)(1)(A)(i), 1568.09, subd. (f)(1)(A), 1569.17,

subd. (f)(1)(A), 1596.871, subd. (f)(1)(A).) The Department argues that all crimes listed in Penal Code section 667.5(c) are non-exemptible offenses. By contrast, the Glesmann plaintiff contends that, irrespective of whether the exemption statutes are construed as general reference statutes, only crimes against an *individual* listed in Penal Code section 667.5(c) should be considered non-exemptible.

By interpreting the exemption statutes to refer to all crimes specified in Penal Code section 667.5(c), the Department renders meaningless the limiting language "crime against an individual," violating the rule of statutory construction that, "whenever possible, significance must be given to every word in pursuing the legislative purpose, and the court should avoid a construction that makes some words surplusage. [Citations.]" (*Agnew v. State Bd. of Equalization* (1999) 21 Cal.4th 310, 330 [87 Cal.Rptr.2d 423, 981 P.2d 52].) The significance of the limiting language is apparent when one contrasts the exemption statutes with other licensing statutes incorporating Penal Code section 667.5(c). For example, in four statutes requiring forfeiture of a license to operate a community care facility upon conviction for certain offenses (forfeiture statutes), the language incorporating Penal Code section 667.5(c) does not refer to a "crime against an individual," but instead simply refers to "another crime specified in subdivision (c) of Section 667.5 of the Penal Code." (§§ 1524, subd. (d), 1568.061, subd. (d), 1569.19, subd. (d), 1596.858, subd. (d).) It is a settled rule of statutory construction that when the Legislature uses a particular word or phrase in one statute, the omission of that word or phrase in another statute dealing with the same general subject matter shows a different legislative intent. (*In re Jennings* (2004) 34 Cal.4th 254, 273 [17 Cal.Rptr.3d 645, 95 P.3d 906].) The Department violates this rule by interpreting the more limited reference to Penal Code section 667.5(c) in the exemption statutes in the same manner as the general reference to that subdivision contained in the forfeiture statutes.

To the extent the statute is ambiguous, the legislative history supports the conclusion the exemption statutes incorporate fewer than all the crimes listed in Penal Code section 667.5(c). An examination of the 1990 legislative history of Assembly Bill No. 3459 (Stats. 1990, ch. 1333, p. 5768), which added an exemption statute (§ 1568.09, subd. (f)(1)) and a forfeiture statute (§ 1568.061, subd. (d)), reveals that the Legislature rejected a version of the exemption statute that would have included all but one of the crimes listed in Penal Code section 667.5(c). In the July 27, 1990, version of the bill, the proposed exemption statute specified that no exemption shall be "granted for conviction of an offense specified in subdivision (c) of Section 667.5 of the Penal Code, with the exception of paragraph (8) of that subdivision (c)."

(Assem. Bill No. 3459 (1989–1990 Reg. Sess.) as amended July 27, 1990, p. 23.) The reference to Penal Code section 667.5(c) was not limited in any way other than excluding a conviction described in Penal Code section 667.5(c)(8).[10] However, prior to its enactment, the Legislature rejected the more general incorporation language and replaced it with the language limiting incorporation of Penal Code section 667.5(c) to "another crime against an individual" specified in that subdivision. (Assem. Bill No. 3459 (1989–1990 Reg. Sess.) as amended Aug. 29, 1990, pp. 30, 33.) The forfeiture statute, by contrast, retained the unlimited incorporation language. (*Id.*, p. 15; § 1568.061, subd. (d).) As a general principle, the Legislature's rejection of specific language constitutes persuasive evidence a statute should not be interpreted to include the omitted language. (See *Beverly v. Anderson* (1999) 76 Cal.App.4th 480, 485–486 [90 Cal.Rptr.2d 545].) Interpreting the exemption statute enacted in 1990 (§ 1568.09) to include all offenses listed in Penal Code section 667.5(c) contravenes this principle.

Amendments to the exemption statutes adding offenses already included in Penal Code section 667.5(c) also support the conclusion the exemption statutes do not incorporate all crimes listed in that subdivision. In particular, after the passage of Proposition 21, the Legislature amended the exemption statutes to add several new crimes as non-exemptible offenses, including arson causing great bodily injury and carjacking. (See §§ 1522, subd. (g)(1)(B), 1568.09, subd. (f)(1)(B), 1569.17, subd. (f)(1)(B), 1596.871, subd. (f)(1)(B).) However, Penal Code section 667.5(c) already included both offenses. (See Pen. Code, § 667.5(c)(10) [arson, added by Stats. 1988, ch. 432, § 1, p. 1812] & (17) [carjacking, added by Proposition 21 in 2000].) The Legislature's addition of carjacking and arson causing great bodily injury to the list of non-exemptible offenses is inexplicable if those offenses were already considered non-exemptible because of their inclusion in Penal Code section 667.5(c).[11]

---

[10] Penal Code section 667.5(c)(8) generally includes any felony in which it was charged and proved that the defendant used a firearm or inflicted great bodily injury during the commission of the offense.

[11] The Department's interpretation of the exemption statutes treats both arson causing great bodily injury (Pen. Code, § 451, subd. (a)) and arson of an inhabited structure (Pen. Code, § 451, subd. (b)) as non-exemptible offenses because both crimes are included in Penal Code section 667.5(c)(10). Yet, the exemption statutes specifically list only one form of arson—arson causing great bodily injury—as a non-exemptible offense. (See, e.g., § 1522, subd. (g)(1)(B).) By choosing to designate only one form of arson as non-exemptible, the Legislature impliedly intended to treat other forms of arson as exemptible offenses. Treating all crimes in Penal Code section 667.5(c) as non-exemptible offenses vitiates this intent and renders the inclusion of arson causing great bodily injury in the exemption statutes not only redundant but utterly meaningless.

The legislative history of the 2000 amendment adding carjacking and arson causing great bodily injury to the exemption statutes reflects the understanding that the amendment would expand the coverage of the exemption statutes to include those crimes. (Sen. Rules Com., Analysis of Sen. Bill No. 1992 (1999–2000 Reg. Sess.) as amended Aug. 29, 2000, p. 3.) The Department points to legislative history associated with a competing bill from the year 2000, Assembly Bill No. 2431, to suggest that arson and carjacking were considered non-exemptible even before their specific inclusion in the exemption statutes.[12] We are not persuaded by the legislative history of a competing bill that did not become law. The inescapable fact is that a portion of the 2000 amendment would have been unnecessary and redundant if the exemption statutes already incorporated all of the crimes listed in Penal Code section 667.5(c).

Accordingly, we conclude that only those offenses listed in Penal Code section 667.5(c) that are properly characterized as crimes against an individual may be treated as non-exemptible offenses for purposes of the exemption statutes.

### c. *"Occupied burglary" is not a crime against an individual.*

The question remains whether "occupied burglary," as defined in Penal Code section 667.5(c)(21), is a crime against an individual and therefore a non-exemptible offense. Nowhere in the Penal Code or the Health and Safety Code is the term "crime against an individual" defined. Indeed, although offenses are categorized in part 1 of the Penal Code under titles that include "Crimes Against the Person," "Crimes Against Property," and "Crimes Against Public Peace," among others, the Penal Code does not define these terms used to classify crimes. The classifications derive from the common law and reflect the type of social harm caused by an offense, with crimes most often categorized into offenses against the person, habitation, property, morality and decency and public peace, and offenses affecting the administration of governmental functions. (Perkins & Boyce, Criminal Law (3d ed. 1982) pp. 33–34.)

Burglary is found in the Penal Code at title 13 of part 1, captioned "Crimes Against Property." The term "crimes against property" is defined in

---

[12] The Department has requested that we take judicial notice of (1) an analysis of Assembly Bill No. 2431 prepared for the Senate Committee on Public Safety and (2) the Governor's veto message for Assembly Bill No. 2431. The request for judicial notice is granted. (Evid. Code, §§ 452, 459; *Kaufman & Broad Communities, Inc. v. Performance Plastering, Inc.* (2005) 133 Cal.App.4th 26, 32 [34 Cal.Rptr.3d 520] [legislative committee reports and analyses appropriate for judicial notice]; *Westly v. U.S. Bancorp* (2003) 114 Cal.App.4th 577, 583–584 [7 Cal.Rptr.3d 838] [citing Governor's veto message]; *City of Richmond v. Commission on State Mandates* (1998) 64 Cal.App.4th 1190, 1199 [75 Cal.Rptr.2d 754] [citing vetoed but related legislation].)

Black's Law Dictionary as "[a] category of criminal offenses in which the perpetrator seeks to derive an unlawful benefit from—or do damage to—another's property without the use or threat of force." (Black's Law Dict. (8th ed. 2004) p. 401, col. 2.) Examples of crimes against property include "burglary, theft, and arson (even though arson may result in injury or death)." (*Ibid.*) By contrast, "crimes against persons" generally refers to "[a] category of criminal offenses in which the perpetrator uses or threatens to use force. Examples include murder, rape, aggravated assault, and robbery." (*Ibid.*) The use or threat of force, therefore, distinguishes crimes against a person from other crimes.

The Glesmann plaintiff contends that occupied burglary does not involve the use or threat of force and is therefore not incorporated into the exemption statutes as a non-exemptible crime against an individual She contends occupied burglary at most poses the potential for violence but does not necessarily involve a threat to use force against another person. We agree.

■■■ "The crime of burglary consists of an act—unlawful entry—accompanied by the 'intent to commit grand or petit larceny or any felony.' " (*People v. Montoya* (1994) 7 Cal.4th 1027, 1041 [31 Cal.Rptr.2d 128, 874 P.2d 903], citing Pen. Code, § 459.) A burglary of an inhabited dwelling house or an inhabited portion of any building constitutes a first degree burglary. (Pen. Code, § 460.) "Inhabited" as used in the burglary statutes means "currently being used for dwelling purposes, whether occupied or not." (Pen. Code, § 459.) Thus, one can be found guilty of first degree burglary even when the perpetrator gains unlawful entry to an unoccupied building. "Occupied burglary," the term we have used to describe the form of burglary defined in subdivision (c)(21) of Penal Code section 667.5, is a first degree burglary where "it is charged and proved that another person, other than an accomplice, was present in the residence during the commission of the burglary." (Pen. Code, § 667.5(c)(21).)

Occupied burglary does not require the use or threat of force. Indeed, the crime does not require any contact between the defendant and the occupant. The mere presence of a nonaccomplice in the dwelling is sufficient. Further, knowledge that a dwelling is occupied is not an element of occupied burglary. Thus, a burglary may qualify as an occupied burglary under Penal Code section 667.5(c)(21) even though the defendant had no contact with the occupant and thought no one was present in the home during the burglary.

■■■ The Department's assertion that burglary involves "violence or the threat of violence" confuses a crime involving the *potential* for violence with one involving a threat to inflict harm. The Department employs a secondary sense of the term "threat"—that is, a potential—instead of the meaning used

to differentiate crimes against the person from property crimes, i.e., the expression of an intention to inflict harm. Occupied burglary plainly presents a potential for violence and consequently merits enhanced punishment. (See *Taylor v. United States* (1990) 495 U.S. 575, 588 [109 L.Ed.2d 607, 110 S.Ct. 2143]; see also *People v. Cruz* (1996) 13 Cal.4th 764, 775–776 [55 Cal.Rptr.2d 117, 919 P.2d 731].) However, for purposes of the exemption statutes, the fact a crime poses a risk of violence does not transform it into a "crime against an individual" unless it requires the use of force or the threat to inflict harm. Occupied burglary includes no such requirement.

The apparent purpose of the exemption statutes is to protect clients of community care facilities from persons who have exhibited a propensity to commit sex crimes or acts of violence. While occupied burglary is a serious offense meriting punishment commensurate with the crime's gravity, a conviction for occupied burglary does not necessarily demonstrate a propensity for violence. In adding occupied burglary to the list of offenses specified in Penal Code section 667.5(c), the Legislature concluded that a multiple violent felony offender who commits or has committed a burglary should be punished more harshly if someone was present at the time of the burglary. But it does not follow that the Legislature at the same time—or at any time—considered the presence of an occupant during a burglary as evidence of the burglar's predisposition to violence. The additional risk of violence created by the presence of an occupant, even if unanticipated, justifies increasing the offender's sentence, but it does not necessarily imply the offender will be predisposed to commit acts of violence.

Treating occupied burglary as an exemptible offense does not mean that a person who has committed such a crime necessarily will be entitled to work in a community care facility. Applicants who have been convicted of occupied burglary will be required to apply for an exemption under section 1522, subdivision (g) in order to obtain a license. (See § 1522, subd. (a)(1), (4)(A).) The application may be granted only if "the [Director of the Department of Social Services] has substantial and convincing evidence to support a reasonable belief that the applicant . . . [is] of good character as to justify" the necessary approval. (§ 1522, subd. (g)(1).) Thus, the director must exercise discretion in determining whether the circumstances of the burglary, in conjunction with all other relevant factors, reflect a propensity for violence inconsistent with employment in a community care facility.

We conclude that a crime added to Penal Code section 667.5(c) after enactment of the exemption statutes may be considered a non-exemptible offense, but only *if it is* a crime against an individual. The Department may in its discretion grant an exemption to a person convicted of occupied burglary,

despite the inclusion of that offense in Penal Code section 667.5(c), because it is not a crime against an individual.[13]

2. *Treating second degree robbery as a non-exemptible offense when the convicted person has obtained a certificate of rehabilitation violates constitutional equal protection guarantees.*

■ Section 1522 allows a person convicted of specified non-exemptible offenses to seek an exemption upon obtaining a certificate of rehabilitation. (§ 1522, subd. (g)(1)(A)(ii).) Only one of the four exemption statutes makes such an exemption available to persons who would otherwise be barred for life from working in community care facilities. (Compare § 1522, subd. (g)(1)(A)(ii) with §§ 1568.09, 1569.17, subd. (f)(1) & 1596.871, subd. (f)(1).)

The offenses for which an exemption is available with a certificate include (i) murder or voluntary manslaughter (Pen. Code § 667.5(c)(1)); (ii) mayhem (Pen. Code § 667.5(c)(2)); (iii) any felony punishable by death or life imprisonment (Pen. Code § 667.5(c)(7)); (iv) "[a]ny felony in which the defendant personally inflicts great bodily injury on any person other than an accomplice which has been charged and proved as provided for in [Penal Code] Section 12022.7 or 12022.9 on or after July 1, 1977, or as specified prior to July 1, 1977, in [Penal Code] Sections 213 [robbery], 264 [rape], and 461 [burglary]." (Pen. Code § 667.5(c)(8)); and, any felony in which the defendant uses a firearm (Pen. Code § 667.5(c)(8)). (§ 1522, subd. (g)(1)(A)(ii).) The exemption is not available under this statute for persons convicted of second degree robbery unless the person was armed or inflicted great bodily harm on a victim during the course of the crime.

The constitutional defects in the statutory classification are apparent. Under the statute, persons guilty of serious crimes such as murder and felonies punishable by death are eligible to apply for an exemption, yet a person such as Jane Doe 2, who suffered a second degree robbery conviction three decades ago, is ineligible even though she obtained a certificate of rehabilitation. Ironically, Jane Doe 2 would have been eligible to apply if her second degree robbery conviction involved the use of a firearm or the infliction of great bodily injury on a nonaccomplice.

■ "Broadly stated, equal protection of the laws means 'that no person or class of persons shall be denied the same protection of the laws . . . enjoyed by other persons or other classes in like circumstances in their lives,

---

[13] Because we conclude that occupied burglary is an exemptible offense, we need not address the Glesmann plaintiff's argument that treating occupied burglary as a non-exemptible offense violates equal protection guarantees.

liberty and property and in their pursuit of happiness.' [Citation.]" (*People v. Wutzke* (2002) 28 Cal.4th 923, 943 [123 Cal.Rptr.2d 447, 51 P.3d 310].) The "threshold inquiry in assessing an equal protection claim is whether the law, in fact, accords 'disparate treatment' to similarly situated persons." (*People v. Guzman* (2005) 35 Cal.4th 577, 584 [25 Cal.Rptr.3d 761, 107 P.3d 860].) "This initial inquiry is not whether persons are similarly situated for all purposes, but 'whether they are similarly situated for purposes of the law challenged.' [Citation.]" (*Cooley v. Superior Court* (2002) 29 Cal.4th 228, 253 [127 Cal.Rptr.2d 177, 57 P.3d 654].)

In a case such as this one involving state licensing and employment issues, the "rational basis" test is the appropriate standard to apply in considering the challenged classification. (*Lopez v. McMahon* (1988) 205 Cal.App.3d 1510, 1516 [253 Cal.Rptr. 321] (*Lopez*).) "In areas of social and economic policy, a statutory classification that neither proceeds along suspect lines nor infringes fundamental constitutional rights must be upheld against equal protection challenge if any reasonably conceivable state of facts could provide a rational basis for the classification." (*FCC v. Beach Communications, Inc.* (1993) 508 U.S. 307, 313 [124 L.Ed.2d 211, 113 S.Ct. 2096].) A party challenging a classification has the burden of negating " 'every conceivable basis which might support it.' [Citations.]" (*Id.* at p. 315.)

 Contrary to the Department's contention, persons convicted of second degree robbery are similarly situated to persons convicted of offenses specified in subdivision (g)(1)(A)(ii) of section 1522 for purposes of our analysis. We acknowledge that the Legislature has broad latitude in defining crimes and corresponding punishments. (See *People v. Pecci, supra,* 72 Cal.App.4th at p. 1503.) A person convicted of one crime is typically not considered to be similarly situated to a person convicted of another crime. (*People v. Cooper* (1996) 43 Cal.App.4th 815, 829 [51 Cal.Rptr.2d 106]; but see *People v. Hofsheier* (2006) 37 Cal.4th 1185, 1198 [39 Cal.Rptr.3d 821, 129 P.3d 29] [rule that persons who commit different offenses are not similarly situated is not absolute].) However, while persons convicted of different crimes may be dissimilar for punitive or rehabilitative purposes, the relevant purpose of the exemption statutes is to protect community care facility clients from unfit caregivers. There is nothing unique in this protective purpose or in the types of different convictions at issue that renders persons convicted of the various offenses dissimilar for equal protection purposes. (See, e.g., *In re Arias* (1986) 42 Cal.3d 667, 688–689 [230 Cal.Rptr. 505, 725 P.2d 664] [adults and juveniles not similarly situated with respect to punishment but are similarly situated with respect to rights restricted by security measures unrelated to rehabilitation or treatment], superseded by statute on another ground as stated in *Thompson v. Department of Corrections* (2001) 25 Cal.4th 117, 130 [105 Cal.Rptr.2d 46, 18 P.3d 1198].) Indeed, courts have undertaken equal protection analyses of statutes with similar

protective purposes that distinguish among persons based on criminal convictions. (See *Lopez, supra,* 205 Cal.App.3d at pp. 1515–1517 [examining exemption statute as applied to person convicted of armed robbery]; *Newland v. Board of Governors* (1977) 19 Cal.3d 705, 712–714 [139 Cal.Rptr. 620, 566 P.2d 254] (*Newland*) [voiding scheme denying benefits to misdemeanor sex offenders but affording them to felony sex offenders].)

The starting point for the rational basis component of the equal protection inquiry is identifying the purpose of the lifetime employment bar for those convicted of certain offenses. (See *Newland, supra,* 19 Cal.3d at p. 711.) The overriding purpose for the lifetime bar is to protect community care clients who might be harmed by an unfit employee. (Cf. *id.* at pp. 711–712 [purpose of statute denying teaching credentials to persons convicted of certain sex offenses is protection, not punishment].)

The analysis in *Newland* is particularly apt. In that case, an amendment to the Education Code allowed individuals convicted of designated sex offenses to apply for teaching credentials if they obtained a certificate of rehabilitation. (*Newland, supra,* 19 Cal.3d at p. 710.) Persons convicted of misdemeanors are ineligible to obtain a certificate of rehabilitation. (*Ibid.*) Because Newland had been convicted of a misdemeanor sex offense, he was ineligible to apply for a teaching credential because he could not obtain a certificate of rehabilitation. (*Ibid.*) The consequence of the law's application was that felony sex offenders, who could obtain a certificate of rehabilitation, were treated more favorably than misdemeanor sex offenders.

The Supreme Court concluded that the statutory preferential treatment for felons as contrasted with misdemeanants denied equal protection: "Because a misdemeanant is not eligible to petition for a certificate of rehabilitation, the 1976 amendment works the Kafka-like perverse effect of providing that a person convicted of a *felony* sex crime who applies for a certificate of rehabilitation and who is otherwise fit, can obtain certification to teach in the community college system but that an otherwise fit person, convicted of a *misdemeanor* sex crime, is forever barred. This statutory discrimination against misdemeanants can claim no rational relationship to the protective purpose of [Education Code] section 13220.16. . . . The Legislature could not possibly or sensibly have concluded that misdemeanants, as opposed to felons, constitute a class of particularly incorrigible offenders who are beyond the hope of rehabilitation." (*Newland, supra,* 19 Cal.3d at p. 712.)

Likewise, the Legislature could not possibly have concluded that persons convicted of second degree robbery constitute a class of incorrigible offenders who are less susceptible to rehabilitation and more of a threat to clients of community care facilities than persons convicted of murder, mayhem, and

felonies punishable by death. The contrast is most stark when comparing persons convicted of second degree robbery with those convicted of the same offenses who also received sentence enhancements for using a firearm or inflicting great bodily injury on a victim. We can conceive of no legitimate purpose served by allowing someone who used a firearm or inflicted great bodily injury during the course of a crime to seek an exemption that is denied—for life—to a person who committed the same offense without using a firearm or inflicting great bodily injury. Simply put, this discriminatory treatment bears no rational relationship to the protective purpose of the exemption statutes.

In the trial court, the Department could not articulate a basis for the classification, which it admitted "does not make a lot of sense." The Department now claims "the Legislature could have concluded that the likelihood for rehabilitation is greater for a person identified in one of the four categories identified in section 1522 than for other categories of criminals." We are not persuaded.

 Statutory classifications must be rationally related to reasonably conceivable legislative purposes. (*FCC v. Beach Communications, Inc., supra,* 508 U.S. at p. 313.) We decline to invent or consider fictitious purposes that could not have been within the contemplation of the Legislature. (*Fein v. Permanente Medical Group* (1985) 38 Cal.3d 137, 163 [211 Cal.Rptr. 368, 695 P.2d 665].)

It is inconceivable the Legislature had in mind the purpose the Department proposes. The offenses for which an exemption may be granted under subdivision (g)(1)(A)(ii) of section 1522 cover a broad range of criminal conduct (see Pen. Code, § 667.5(c)(8)), and include precisely the same offenses that fall outside the statute's reach when committed without a firearm or the infliction of great bodily injury. Common sense dictates that the use of a weapon and the infliction of great bodily injury are factors that render someone *less* suitable to work with community care facility clients. There is no reason to believe that persons who use a firearm or inflict great bodily injury have lower recidivism rates than persons who commit the same offenses without using a firearm or inflicting injury.

In *Lopez*, the Court of Appeal upheld the permanent exclusion provisions of section 1596.871 against an equal protection challenge brought by a woman whose husband had been convicted of armed robbery. (*Lopez, supra,* 205 Cal.App.3d at pp. 1513–1515.) Lopez was barred from seeking an exemption under Penal Code section 667.5(c)(8) to operate a child care facility at her home because her husband had been convicted of a felony in which he used a firearm. (205 Cal.App.3d. at pp. 1514–1515.) The

*Lopez* court found the statutory scheme was constitutional and that the Legislature could reasonably conclude that persons convicted of crimes against children, sex offenses, and crimes involving violence or the threat of violence posed a peculiar threat to the health and safety of children. (*Id.* at p. 1517.) The court described as "startling" the assertion by Lopez that a felon who used a gun presents no greater threat of harm to children in a day care setting than would a felon convicted of a felony without the use of a firearm. (*Id.* at p. 1518.)

Here, the Department proposes to turn *Lopez* on its head. Instead of affording greater protection to clients of community care facilities from persons convicted of using firearms in the commission of their crimes, the statutory scheme provides less protection than it does for persons convicted of crimes not involving the use of a firearm.

The Department also relies on *People v. Acuna* (2000) 77 Cal.App.4th 1056 [92 Cal.Rptr.2d 224], which found a rational basis for allowing persons convicted of crimes such as murder, mayhem, and rape to obtain an expungement of their offenses under Penal Code section 1203.4 while denying that remedy to persons convicted of lewd or lascivious acts with minors (Pen. Code, § 288). In *Acuna,* it was reasonable to assume that the class subject to disparate treatment posed a unique danger to the state's interest in protecting children because persons convicted of child abuse, unlike persons convicted of other crimes, might use the "false sense of security" generated by an expungement to gain access to children and commit further crimes. (77 Cal.App.4th at p. 1060.) In short, *Acuna* stands for the commonsense principle that those convicted of sex offenses against children, in contrast to persons convicted of other offenses, present a peculiar risk to children. No such principle supports the challenged classification here.

We agree with the trial court that the classifications drawn by section 1522, subdivision (g)(1)(A)(ii) cannot withstand even relaxed equal protection review. The classifications violate equal protection principles contained in the California and federal Constitutions and may not be relied upon to deny the right of a person convicted of second degree robbery to seek an exemption under section 1522, subdivision (g)(1)(A)(ii) if the convicted person has obtained a certificate of rehabilitation.[14]

---

[14] We do not suggest that persons convicted of second degree robbery who have obtained a certificate of rehabilitation have a right to work in community care facilities. We merely conclude that such persons must be given the same opportunities to apply for an exemption that are afforded to persons convicted of the offenses listed in subdivision (g)(1)(A)(ii) of section 1522. The Department retains the discretion to grant or deny a requested exemption.

3. *The Department's procedure for notifying individuals it determines have been convicted of non-exemptible offenses fails to provide adequate due process protections.*

The judgment requires the Department to inform individuals it has determined have been convicted of a non-exemptible offense of (1) the standards used in reaching the non-exemptible determination, (2) the identity of the documents or other materials upon which the Department relied, and (3) the conviction charge and, if known, the approximate date and court in which the conviction occurred.

"Our state due process constitutional analysis differs from that conducted pursuant to the federal due process clause in that the claimant need not establish a property or liberty interest as a prerequisite to invoking due process protection. [Citations.] Focused rather on an individual's due process liberty interest to be free from arbitrary adjudicative procedures [citation], procedural due process under the California Constitution is 'much more inclusive' and protects a broader range of interests than under the federal Constitution [citations]. According to our Supreme Court, it 'has expanded upon the federal analytical base by focusing on the administrative process itself.' [Citation.]" (*Ryan v. California Interscholastic Federation-San Diego Section* (2001) 94 Cal.App.4th 1048, 1069 [114 Cal.Rptr.2d 798].)

The extent to which procedural due process is available depends on a weighing of private and governmental interests involved. (*People v. Ramirez* (1979) 25 Cal.3d 260, 269 [158 Cal.Rptr. 316, 599 P.2d 622] (*Ramirez*).) This weighing process "generally requires consideration of (1) the private interest that will be affected by the official action, (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards, (3) the dignitary interest in informing individuals of the nature, grounds and consequences of the action and in enabling them to present their side of the story before a responsible governmental official, and (4) the governmental interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." (*Ibid.*)

The Department contends its existing notice procedures satisfy due process, claiming (1) due process is not implicated because convicted persons have no right to work in licensed community care facilities, (2) Department procedures do not pose a significant risk of erroneous deprivation of a private interest because applicants can request their criminal records from the

Department of Justice and pursue administrative appeals of the decision, and (3) the additional procedural safeguards required by the trial court impose a significant administrative burden and may violate privacy interests if persons other than the applicant receive the notice listing the applicant's disqualifying offense.

The Department made similar claims in *Gresher v. Anderson* (2005) 127 Cal.App.4th 88 [25 Cal.Rptr.3d 408] (*Gresher*), in which this court held that due process requires the Department to provide additional information to persons seeking a criminal record exemption. In *Gresher,* the court considered the adequacy of the notices sent by the Department to persons convicted of *exemptible* offenses. One such notice is an "exemption needed" notice, which informs a person convicted of an exemptible offense that he or she may apply for a criminal record exemption. (*Id.* at pp. 98, 104–110.) The other notice examined in *Gresher* was an "exemption denied" notice, which informs a person seeking an exemption that the Department has denied the request. (*Id.* at pp. 99, 112–114.)

*Gresher* involved the same inadequacy in the notice as that alleged in these actions—the Department failed to tell applicants which convictions precluded them from working in community care facilities. (*Gresher, supra,* 127 Cal.App.4th at p. 98.) The reasons offered by the trial court in *Gresher* for denying relief are nearly identical to the Department's defense of its practices in these actions: "(1) the private interest in obtaining the jobs in question was 'minimal,' given the 'presumptive statutory disqualification' of persons with criminal records; (2) the governmental interest at stake was high, given the vulnerability of the populations served by community care facilities; (3) the 'exemption needed' letter adequately informed recipients of their right to seek an exemption and their opportunity to obtain their criminal record; and (4) due process was afforded to the affected persons by granting them the right to pursue an appeal from the Department's denial of an exemption, with the right of discovery." (*Id.* at p. 104.)

Although the notice here concerns non-exemptible offenses rather than exemptible offenses, we conclude that the due process analysis in *Gresher* is dispositive of the issues raised by the Department. We therefore summarize the analysis in *Gresher* with reference to facts specific to notices sent to persons convicted of non-exemptible offenses.

In *Gresher,* the court analyzed the litigants' competing claims in light of the four *Ramirez* factors. (*Gresher, supra,* 127 Cal.App.4th at pp. 106–110.) With regard to the first of the *Ramirez* factors—the private interest at

stake—this court wrote: "The Department denies that any private interest cognizable under the federal or state due process clauses is affected by the 'exemption needed' letters. However, it is beyond dispute that both these clauses 'protect[] the pursuit of one's profession from abridgment by arbitrary state action.' [Citations.] The constitutional interest at stake has been acknowledged in circumstances analogous to those before us." (*Gresher, supra,* 127 Cal.App.4th at pp. 106–107.) Similarly, in the case of notices sent to persons convicted of purportedly non-exemptible offenses, the private interest at stake is the freedom to pursue a private occupation. A non-exemptible determination alters an individual's preexisting status under state law by making a formal determination regarding his or her eligibility to work, drastically constrains future employment opportunities, and stigmatizes the individual as unfit. There is plainly a substantial private interest at stake.

Addressing the second *Ramirez* factor in *Gresher,* the court wrote: "The second *Ramirez* factor we must consider is the risk of an erroneous deprivation of the interest in obtaining an exemption and the probable value, if any, of additional or substitute safeguards. The additional safeguard sought by Gresher is specific notice of the convictions the employee or Trustline applicant must address in an application for an exemption. The Department claims its notices sufficiently guard against the risk of erroneous deprivation by informing recipients how to seek an exemption and how to obtain a copy of their criminal record. The Department also emphasizes the subsequent levels of process afforded to the affected individuals, including notice of the Department's decision on their exemption request and the opportunity to seek administrative and ultimately judicial review of the final decision." (*Gresher, supra,* 127 Cal.App.4th at p. 107.)

This court noted in *Gresher* that "the Department does not specifically identify the convictions that recipients of the 'exemption needed' letters are required to explain in an exemption request," and observed that the sufficiency of the opportunity to obtain a copy of one's criminal record from the Department of Justice is questionable "given the short time frame for requesting an exemption." (*Gresher, supra,* 127 Cal.App.4th at p. 108.) This court had little difficulty identifying the "probable value" of the requested additional safeguards—providing recipients with specific notice of the convictions they must address to obtain an exemption. "Errors in conviction records could be addressed immediately, and any confusion over the events for which the Department demands an explanation would be greatly reduced. Indeed, the practical value of more specific notice is irrefutably established by the Department's implicit concession that recipients of 'exemption needed' letters are ordinarily unable to obtain an arrest record from the Department of Justice within the time period allowed for requesting an exemption." (*Ibid.*)

Likewise in the case of notice to persons convicted of non-exemptible offenses, by failing to specify the basic information necessary to assess whether a non-exemptible determination rests on incorrect information or a misapplication of the standards, the process presents a high danger of error. This danger of error is enhanced due to the complexity of the statutory scheme identifying more than 50 non-exemptible offenses, some of which are non-exemptible only under specified conditions.

The Department's reliance on subsequent procedural protections is misplaced. Appeal rights are meaningless if an applicant has no notice of the basis for a determination that he or she is ineligible to work in a community care facility. If an applicant is unaware of the conviction found to be non-exemptible or the standards and documents relied upon to make the determination, the applicant cannot make an informed decision whether to appeal. As recognized in *Gresher,* the option of requesting one's criminal record has questionable value in light of the long delays in securing such records. (*Gresher, supra,* 127 Cal.App.4th at p. 108.) The delay is particularly crippling because an applicant is required to file an administrative appeal within 15 days of the date of the notice.

The additional safeguards imposed by the trial court—providing the applicant with the standards used in reaching the non-exemptible determination, the identity of the documents or materials relied upon by the Department in making the determination, and the conviction charge—have certain value in preventing an erroneous deprivation of an applicant's private interest. These safeguards allow an individual an opportunity to immediately correct a wrongful disqualification before the job is lost or irrevocably given to another worker.

The third *Ramirez* factor is the "dignitary interest in informing individuals of the nature, grounds and consequences of the action and in enabling them to present their side of the story before a responsible governmental official . . . ." (*Ramirez, supra,* 25 Cal.3d at p. 269.) Addressing this factor in *Gresher,* this court observed that "significant dignitary concerns are raised by a procedure in which the state informs persons only that it has received unspecified 'criminal history' about them . . . ." (*Gresher, supra,* 127 Cal.App.4th at p. 109.) This concern applies with equal or greater force to notices addressed to persons convicted of offenses the Department has concluded are non-exemptible. A notice vaguely referring to a criminal conviction that permanently bars an individual from working in community care facilities violates the dignitary interest one has in understanding the nature, grounds, and consequences of governmental action.

"The final *Ramirez* factor is the government interest at stake, including the fiscal and administrative burdens that the additional procedural requirements

would entail." (*Gresher, supra,* 127 Cal.App.4th at p. 109.) In *Gresher,* the Department advanced the same arguments it makes in these actions, claiming that listing convictions in the notice would violate the state's interest in maintaining the privacy of criminal history information and would impose a significant administrative burden on the Department. (*Ibid.*) The court addressed the Department's concerns as follows: "The Department can assert no legitimate privacy interest in keeping criminal history information from convicted persons themselves. That information need not be provided to the licensee employer. . . . It is difficult to imagine that the administrative burden of providing this information would outweigh the obvious benefits flowing from increasing the openness and efficiency of the exemption process. . . . [S]imply including the nature and date of the disqualifying conviction or convictions in the notice sent to the individual would not be a crippling administrative burden. (*Id.* at p. 109, fn. omitted.)

■ This same analysis governs our consideration of notices sent to persons the Department concludes have been convicted of non-exemptible offenses. Privacy concerns do not preclude advising the applicant of his or her disqualifying convictions, and the administrative burden of providing additional information in notices sent to persons convicted of non-exemptible offenses is significantly less than the burden of providing more detailed information in "exemption needed" notices because there are so many fewer applicants convicted of non-exemptible crimes.

In *Gresher* this court concluded the due process analysis by stating, "In sum, balancing the *Ramirez* factors leads us to conclude that due process requires the Department to tell individuals what convictions they must address to obtain an exemption. The private interest in a fair exemption process is substantial; the probable value of including specific conviction information is high, considering the risk of erroneous deprivation of employment opportunities through mistake or confusion; the dignitary interests of both the affected individuals and the Department militate in favor of a process that permits the individual to obtain the information necessary to respond meaningfully within the time allotted for doing so; and the governmental interest in keeping the conviction information to itself is nonexistent, while the administrative burden of disclosure is minimal." (*Gresher, supra,* 127 Cal.App.4th at p. 110.)

For the reasons detailed in *Gresher,* we affirm the judgment to the extent it requires the Department to provide additional information to persons it determines have been convicted of a non-exemptible offense.

4. *All the plaintiffs have standing as citizens to enforce a public duty.*

The Department advances a number of standing and ripeness arguments, none of which has merit. As for Jane Doe 1, who was convicted of first degree burglary but not "occupied burglary," as defined in subdivision (c)(21) of Penal Code section 667.5, the Department contends she lacks standing to seek relief on behalf of class members who have been convicted of occupied burglary. They further contend that Jane Doe 2, who was convicted of second degree robbery, has no standing to challenge section 1522, subdivision (g)(1)(A)(ii) because she has produced no evidence she obtained a certificate of rehabilitation allowing her to seek an exemption under that statute. The other plaintiff challenging that statute, Janet Coe, also produced no evidence of a certificate of rehabilitation and does not claim to have one.

▬ We are satisfied that both the Glesmann plaintiff and the Doe plaintiffs have standing as taxpayer-citizens to compel the Department to enforce a public duty. (*Green v. Obledo* (1981) 29 Cal.3d 126, 144–145 [172 Cal.Rptr. 206, 624 P.2d 256]; *Gresher, supra,* 127 Cal.App.4th at p. 114.) " ' "[W]here the question is one of public right and the object of the mandamus is to procure the enforcement of a public duty, the relator need not show that he has any legal or special interest in the result, since it is sufficient that he is interested as a citizen in having the laws executed and the duty in question enforced . . ." ' [citation]." (*Green v. Obledo, supra,* 29 Cal.3d at p. 144, quoting *Bd. of Soc. Welfare v. County of L.A.* (1945) 27 Cal.2d 98, 100–101 [162 P.2d 627].)

The proper implementation of statutes foreclosing employment to rehabilitated ex-offenders is a matter of public right and public importance. Here, the Glesmann and Doe actions seek mandate to enforce compliance with the law. It is immaterial that Jane Doe 1 was not convicted of occupied burglary, because she has standing as a taxpayer-citizen to compel the performance of a public duty. The same is true of Jane Doe 2 and Janet Coe, regardless of whether they can offer evidence they received a certificate of rehabilitation. Furthermore, the cases relied upon by the Department addressing whether a class representative has standing to seek relief on behalf of a class of persons with materially different claims are inapposite. The injunctive and declaratory relief afforded by the judgment is not dependent upon the certification of a class.

The Department also contends that the Glesmann plaintiff's equal protection challenge to statutory provisions involving certificates of rehabilitation is not ripe for review. Because the Glesmann plaintiff's equal protection challenge is rendered moot by our conclusion that occupied burglary is an exemptible offense, we need not address the Department's ripeness argument.

## DISPOSITION

The judgment is affirmed. All parties shall bear their own costs on appeal.

Parrilli, J., and Pollak, J., concurred.