Filed 9/8/23  P. v. Vuong CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | B319891 |
| Plaintiff and Respondent, | Los Angeles County |
| v. | Super. Ct. No. KA110002 |
| HUNG SI VUONG, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Juan Carlos Dominguez, Judge.  Sentence vacated; remanded.

William G. Holzer, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, William H. Shin and Lindsay Boyd, Deputy Attorneys General, for Plaintiff and Respondent.

———————————

Hung Si Vuong appeals from the trial court's decision on resentencing under Penal Code section 1385 and former section 1170, subdivision (d)(1)[1] declining to strike his five-year serious felony prior.  Because the record does not establish the trial court was aware of, and applied, the provisions of the governing statute —section 1385, as amended effective January 1, 2022—we vacate Vuong's sentence and remand for further proceedings.

## FACTS AND PROCEDURAL BACKGROUND

1.    *The crime, trial, and original sentence*

The facts giving rise to this case are set forth in our 2018 opinion in Vuong's direct appeal, *People v. Vuong* (May 29, 2018, B276627) [nonpub. opn.] (*Vuong I*).  On April 30, 2015, around 11:00 a.m., Armand Vargas left his townhome to take his mother to the hairdresser.  He returned home less than an hour later. Vargas drove into his garage, walked across his covered patio, and went into the townhome through a sliding glass door. Vargas noticed the glass door was open about 12 inches. He heard footsteps upstairs.  Vargas walked quietly around the kitchen and living room for a few minutes.  He went to the base of the stairs where there was a mirror to see if he could see anything, but he could not.  Then he went back outside, into the alley, and called 911.  (*Vuong I*.)

---

[1]    References to statutes are to the Penal Code.  The Legislature later amended the recall and resentencing provisions of section 1170 to section 1170.03 and then renumbered it as section 1172.1.  (Assembly Bill No. 200 (2021-2022 Reg. Sess.) (Stats. 2022, ch. 58, § 9), effective June 30, 2022.  See *People v. E.M.* (2022) 85 Cal.App.5th 1075, 1080, fn. 3.)  We cite section 1172.1 to refer to the current version of the statute; we sometimes refer to "former section 1170(d)" to refer to subdivision (d) of section 1170 as it existed before the recent legislation.

As Vargas was talking to the 911 operator, Vuong came through the gate from Vargas's patio into the alleyway. Vuong "seemed surprised" to see Vargas. Seeing that Vargas was on the phone, Vuong "asked [him] to wait" then said, "I made a mistake." Vargas asked Vuong, "What are you doing in my house?" At trial, Vargas could not recall Vuong's response. At some point, Vuong said "verify" and pointed to a nearby townhome that was under construction. After this brief exchange with Vargas, Vuong started to walk briskly around the corner. (*Vuong I.*)

Officer David Reyes arrived and found Vuong in a white van near the front of Vargas's townhome. Reyes conducted a field show up and Vargas identified Vuong as the man he had seen coming out of his patio. Vargas did not find any of his property missing. (*Vuong I.*)

In January 2016 a jury found Vuong guilty of first degree burglary and found true an allegation that another person was present in the residence when the crime was committed. In a priors trial, the jury found Vuong had suffered a prior strike for first degree residential burglary in 2004. The jury also found Vuong had been convicted of three burglaries in Hawaii in 1995 and 1996.[2] (*Vuong I.*)

---

[2] The Attorney General's statement that the jury "found true the allegations that [Vuong] suffered four prior convictions for serious and violent felonies" is misleading. While the jury found true the allegations that Vuong had been convicted of four burglaries—one in California and three in Hawaii—the trial court later found the prosecution had not met its burden to establish the Hawaii convictions were strikes under California law.

The trial court denied Vuong's *Romero* motion[3] and sentenced him to 18 years in the state prison. The court chose the upper term of six years and doubled it because of the strike. The court imposed five years under section 667, subdivision (a)(1) for the 2004 serious felony prior plus one year under section 667.5, subdivision (b) for Vuong's commitment to prison in the Hawaii case. We affirmed Vuong's conviction. (*Vuong I*.)

**2.    *The Secretary's letter and report***

In September 2021 Kathleen Allison, the Secretary of the California Department of Corrections and Rehabilitation (CDCR), sent a letter to the trial court. Secretary Allison requested that the court resentence Vuong under former section 1170(d). The letter noted courts had been barred from striking prior serious felony convictions but, effective January 1, 2019, courts were authorized to do that under section 1385. Secretary Allison stated she had "personally review[ed] inmate Vuong's commitment offense and in-prison conduct," and she "recommend[ed] that [his] sentence be recalled and that he be resentenced in accordance with . . . section 1170, subdivision (d)(1)."

The Secretary's letter enclosed a five-page report dated August 20, 2021. The report summarized the facts of Vuong's 2015 crime and his criminal and parole history. The report stated Vuong had "remained disciplin[e] free during this term of incarceration" and he had "no pending disciplinary actions." He had completed a number of courses and earned an A.A. degree. According to a July 2018 Education Progress Report, "Vuong received satisfactory marks in five reviewable categories and an unsatisfactory mark in one reviewable category for his

---

[3]    *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497.

4

work in Vocational Computer & Related Technology." Vuong had "worked towards completing assignments and was respectful and resourceful." He had "made efficient use of time in class and produced quality work." However, Vuong had been "caught cheating on a test, which was described as unethical behavior and required the instructor to change the entire test."

According to a January 2019 Education Progress Report, Vuong "received satisfactory marks in all reviewable categories" in the same computer technology course, he had "passed testing in Microsoft Word and Microsoft PowerPoint," and he "was always cheerful and helped others without hesitation." Education Progress Reports dated October 2018, March 5, 2019, March 29, 2019, July 2019, and August 2019 reflected "satisfactory marks in all reviewable categories" in computer and engine repair classes. In November 2020 Vuong was "accept[ed] into the Phi Theta Kappa Honor Society."

The report's discussion of Vuong's work in prison is somewhat difficult to understand. A February 2021 report stated, "Vuong received satisfactory marks in all reviewable categories in his assignment as a Dining Room Worker," but then noted "he never reported to work due to COVID-19 procedures." Another report dated June 2021 said Vuong "received unsatisfactory marks in all reviewable categories for his performance as a Dining Room Worker," adding, "Vuong had never worked . . . due to the modified program caused by Covid-19." The report continued, "Since phase, three [*sic*] of the program was initiated, Vuong had not reported to work. The supervisor was requesting him to be reassigned as soon as possible."

The report listed certificates Vuong had received for completing various programs, including anger management, domestic violence, and "self-development."

### 3. *Proceedings in the trial court on the CDCR recommendation*

The court appointed counsel for Vuong and set the matter for a status conference. In March 2022, Vuong's counsel filed a Memorandum in Support of Resentencing. Counsel asked the court to strike both the five-year serious felony prior and the one-year prison prior. Counsel attached an eight-page report by a court-appointed social worker, Regina Robles. Robles—who had interviewed Vuong—stated he'd been "born during the middle of the Vietnam War," one of six children whose mother "struggled to keep her children alive" after their father moved to the city to find work. When Vuong was 13, his mother sent him and his 17-year-old brother "towards the harbor." Vuong and his brother "escaped" in a small boat to a refugee camp in Malaysia.

Vuong and his brother made it to Hawaii where a "host family" helped them find an apartment and "qualify for welfare." After the hosts gave Vuong and his brother the keys to the apartment, the boys "never heard from them again." Vuong injured his back working in construction and began using methamphetamine.

Vuong's counsel also attached copies of his transcripts from Cuesta College, which he attended while in prison, various certificates and "laudatory" "chrono[s]," a document entitled "Detailed Release Plan," letters, and a July 2016 psychologist's report apparently prepared for Vuong's trial counsel.

The prosecution agreed the court was required to recall the sentence. The prosecution also agreed the court could no longer impose the one-year prison prior in light of Senate Bill No. 136 (Stats. 2019, ch. 590). But the prosecution opposed Vuong's request that the court not re-impose the five-year serious felony

6

prior.  The prosecution also asked the court again to choose the upper term of six years as the base term.

The parties appeared before the trial court on April 19, 2022.  The court did not discuss the nine enumerated "mitigating circumstances" listed in section 1385, as amended effective January 1, 2022 (discussed below).  Nor did the court mention the Legislature's pronouncement in the amended statute that the presence of one (or more) of the nine factors "weighs greatly in favor of dismissing the enhancement[ ] unless the court finds that dismissal of the enhancement would endanger public safety." (§ 1385, subd. (c)(2).)  The court asked counsel, "[I]s there a prohibition of me taking a look at his record in its totality?  Because I wouldn't be looking at . . . just that single conviction. . . .  I'm looking at his history in its totality, and it's a horrible history.  This man's a career criminal."

Vuong's counsel began to discuss Vuong's conduct in prison.  The court interrupted:  "Let me stop you right there.  What I want you to explain is his cheating on a test that caused the whole curriculum or the whole testing procedure to be redone.  This is what Mr. Vuong did while he was in prison."  Counsel replied, "Yes, Your Honor.  That's one instance of . . . ."  The court interrupted, "That's a very serious incident, counsel."

Counsel emphasized Vuong had "multiple positives," including his A.A. degree, making the honor roll in community college, and "rehabilitative programming."  Counsel said Vuong had no disciplinary "write-ups."  Counsel noted Vuong had been a refugee and had "a history of trauma."  The court replied, "Well, I'll tell you this.  And I don't mean to inject myself in there, but I was born in Cuba and I was also a refugee."

The court noted there had been "a lengthy, lengthy *Romero* type hearing" and the court had found the Hawaii burglaries "did not quite match up to the burglary statutes here so that's

7

the only reason he didn't get a 25-to-life sentence." The court added, in its opinion, Vuong is "the picture-perfect person for a three strikes violation."

The court continued: "The man has learned nothing in the time that he was incarcerated." The court said Vuong served 10 years on the Hawaii convictions, then came to California and did "the exact same thing." The court referred to the facts of the 2015 California burglary, noting Vuong was on the second floor of the victim's house, then fled from the police. The court again mentioned the 2018 cheating incident in prison: "He's manipulating a test there." Even if Vuong didn't receive a write-up for it, the court added, "[I]t tells you . . . who this individual is. It tells you the dishonesty that Mr. Vuong will pursue in order to gain a benefit for himself."

The court said it was "not confident at all that . . . if he were to be released today, that he would not continue on his criminal endeavors based on his history. History has a tendency to repeat itself." The court again referred to the cheating incident: "[I]n state prison, you have the gall to cheat on a test." Counsel told the court it was "ignoring" "the mitigation factors." The court replied it was "looking at the totality of the circumstances," including "the conduct . . . that [Vuong] exhibited in walking into people's apartments in Hawaii while people were there in some cases." The court said it was "not ignoring the few years of good conduct he's had" but "that mitigation is greatly outweighed . . . by everything else."

The court continued, "[Vuong] displayed not one ounce of honesty throughout these procedures, and he has maintained his criminal conduct unabated for decades. . . . The cheating is just one additional factor that an individual who is in custody has the temerity to engage in."

8

Vuong then addressed the court. Vuong said he was 57 years old and, thanks to the rehabilitation prison had provided, he was "no longer lost and confused." Vuong told the court he was "no longer the person that [he] was," that he had "qualified" for a halfway house, and that he is a carpenter. The court then asked Vuong some questions. The court told Vuong residential burglaries were "devastating" crimes, adding, "You completely shatter everyone's . . . sense of well-being, their sense of security. A man's home is his castle. When someone intrudes [into] it, it's a horrible thing."

The court said it was striking the one-year prison prior "only . . . because I have to. Otherwise, I wouldn't." The court stated, "The totality of the circumstances in this case and the negative aspects of Mr. Vuong's conduct, the entirety of his history, including his performance while in state prison, outweigh any mitigating factor . . . that would justify this court in striking both the one-year prior and the five-year prior." The court then resentenced Vuong to 17 years in prison: the upper term of six years, doubled, plus the serious felony prior.

## DISCUSSION

Section 1172.1 authorizes a trial court, at any time upon the recommendation of the Secretary of CDCR (among others), to recall a defendant's sentence and resentence him in the same manner as if he had not previously been sentenced, provided the new sentence is no greater than the initial sentence. (§ 1172.1, subd. (a)(1); *People v. McMurray* (2022) 76 Cal.App.5th 1035, 1040.) A CDCR recommendation "furnishes the court with jurisdiction it would not otherwise have to recall and resentence and is 'an invitation to the court to exercise its equitable jurisdiction.' " (*McMurray*, at p. 1040, quoting *People v. Frazier*

9

(2020) 55 Cal.App.5th 858, 866.)[4]  As the prosecution conceded in the trial court, upon receipt of Secretary Allison's letter the trial court was required to recall Vuong's sentence and resentence him.

As amended by Senate Bill No. 81 (2021-2022 Reg. Sess.) (Stats. 2021, ch. 721, § 1), "section 1385 grants trial courts 'the authority'—and simultaneously imposes upon them a duty— 'to strike or dismiss a [sentencing] enhancement' (or, if they choose, the 'additional punishment for that enhancement') if doing so is 'in the furtherance of justice.'  (§ 1385, subds. (b)(1), (a) [granting 'authority']; *id.*, subd. (c)(1) ['the court *shall dismiss* an enhancement if it is in the furtherance of justice to do so' (italics added)].)"  (*People v. Walker* (2022) 86 Cal.App.5th 386, 395 (*Walker*), review granted Mar. 22, 2023, S278309.) Notwithstanding the word "shall," dismissal of an enhancement remains permissive, not mandatory.  "[T]he statement that a court 'shall' dismiss certain enhancements appears as a subpart to the general provision that a 'court shall dismiss an enhancement *if* it is in the furtherance of justice to do so.' (§ 1385, subd. (c)(1), italics added.)"  (*People v. Anderson* (2023) 88 Cal.App.5th 233, 239, review granted Apr. 19, 2023, S278786.) "In other words, the dismissal of the enhancement is conditioned on a court's finding dismissal is in the interest of justice."  (*Ibid.*

---

[4]  Section 1172.1 expressly authorizes the court to "consider postconviction factors, including, but not limited to, the disciplinary record and record of rehabilitation of the defendant while incarcerated, evidence that reflects whether age, time served, and diminished physical condition, if any, have reduced the defendant's risk for future violence, and evidence that reflects that circumstances have changed since the original sentencing so that continued incarceration is no longer in the interest of justice."  (§ 1172.1, subd. (a)(4).)

See also *Walker*, at p. 396 [appellate court is required to consider where the phrase "shall dismiss" fits into the context of the statute as a whole].)

"Section 1385 makes clear that whether dismissal of an enhancement is 'in the furtherance of justice' is a 'discretion[ary]' call for the trial court to make. (*Id.*, subd. (c)(2) ['In exercising its *discretion* . . .' (italics added)]; *id.*, subd. (c)(3) ['court may exercise its *discretion* at sentencing' or 'exercis[e] its *discretion* before, during, or after trial or entry of plea' (italics added)].)" (*Walker, supra,* 86 Cal.App.5th at p. 395.)[5]

Senate Bill No. 81 provided direction on how trial courts are to exercise their discretion in deciding whether to dismiss sentencing enhancements. (*Walker, supra,* 86 Cal.App.5th at p. 395.) "[S]ection 1385 now enumerates nine 'mitigating circumstances,' and mandates that the presence of any [of those] circumstance[s] '*weighs greatly* in favor of dismissing the enhancement . . . unless the court finds that dismissal of the enhancement would endanger public safety.' (*Id.*, subd. (c)(2), italics added.) Dismissal endangers public safety if 'there is a likelihood that the dismissal of the enhancement would result in physical injury or other serious danger to others.' (*Ibid.*)" (*Walker*, at p. 395.)

In *Walker*, our colleagues in Division Two considered the question, "What weight must a trial court give a mitigating circumstance in order to give it 'great weight' within the meaning of subdivision (c)(2) of section 1385?" (*Walker, supra,* 86 Cal.App.5th at p. 396.) The *Walker* court concluded

---

[5] *Walker* did not involve a recommendation under section 1172.1; it arose from a petition for a writ of habeas corpus. (*Walker, supra,* 86 Cal.App.5th at p. 393.) That difference does not affect its application to this case.

the provisions of subdivisions (c)(1) and (c)(2) of section 1385 collectively "dictate that trial courts are to rebuttably presume that dismissal of an enhancement is in the furtherance of justice (and that its dismissal is required) *unless* the court makes a finding that the resultingly shorter sentence due to dismissal 'would endanger public safety' " as section 1385 defines that term. (*Walker*, at p. 398. But see *People v. Ortiz* (2023) 87 Cal.App.5th 1087, 1090, 1098 (*Ortiz*), review granted Apr. 12, 2023, S278894.)

On March 22, 2023, our Supreme Court granted review in *Walker*. The high court stated, "The issue to be briefed and argued is limited to the following: Does the amendment to Penal Code section 1385, subdivision (c) that requires trial courts to 'afford great weight' to enumerated mitigating circumstances (Stats. 2021, ch. 721) create a rebuttable presumption in favor of dismissing an enhancement unless the trial court finds dismissal would endanger public safety?" (S278309.) The court ordered that *Walker* may continue to be cited for its persuasive value pending review. (*Ibid*.)

One of the nine enumerated mitigating circumstances in the amended statute is, "The enhancement is based on a prior conviction that is over five years old." (§ 1385, subd. (c)(2)(H).) It is undisputed that Vuong was convicted of his prior strike in November 2004.[6] Accordingly, the question before the trial court

---

[6] Defense counsel also argued the mitigating factor of "childhood trauma" applies in this case, citing the social worker's report. (See § 1385, subd. (c)(2)(E) ["[t]he current offense is connected to prior victimization or childhood trauma"].) Without specifically addressing that mitigating factor, the court stated, "I have evidence that he was in Vietnam and it was a war-torn country and his parents sent him to get him away from all that. But that's all. I don't have a thing from a psychologist." Section

was whether striking Vuong's serious felony prior "would endanger public safety"—that is, whether the record demonstrated "a likelihood that the dismissal of the enhancement would result in physical injury or other serious danger to others." (§ 1385, subd. (c)(2); *Walker*, *supra*, 86 Cal.App.5th at p. 395.)[7]

The resentencing hearing in this case took place before our colleagues in Division Two issued *Walker*. In her April 12, 2022 resentencing memorandum, the prosecutor quoted section 1385 as amended, including the provision that, "In exercising its discretion under [subsection (c)(1)], the court shall consider and afford great weight to evidence offered by the defendant to prove that any of the mitigating circumstances in subparagraphs

---

1385, subdivision (c)(6)(A) authorizes the court, in determining whether a defendant suffered childhood trauma that is "connected to the offense," to consider "any relevant and credible evidence, including, but not limited to, police reports, preliminary hearing transcripts, witness statements, medical records, or records or reports by qualified medical experts."

On appeal, Vuong also argues—as he did in the trial court —that another mitigating factor was that "[m]ultiple enhancements are alleged in a single case." (§ 1385, subd. (c)(2)(B) ["In this instance, all enhancements beyond a single enhancement shall be dismissed."].) But once the trial court dismissed the one-year prison prior enhancement, the only enhancement remaining in this case is the five-year serious felony prior.

[7]      We acknowledge the Sixth District in *Ortiz*, *supra*, 87 Cal.App.5th at pp. 1090-1093, 1096, disagreed with *Walker*, rejecting the defendant's contention there "that the mitigating factor [that the defendant's current offense—felony vandalism— was not a violent felony] warranted a presumption in favor of dismissal that could only be rebutted by a showing that dismissal would endanger public safety." Pending guidance from our high court, we find the *Walker* court's analysis more persuasive.

13

(A) to (I) are present.  Proof of the presence of one or more of these circumstances weighs greatly in favor of dismissing the enhancement."  (§ 1385, subd. (c)(2).)  The prosecutor went on, however, to quote at length from the hearing on Vuong's *Romero* motion.  At the April 19, 2022 hearing, Vuong's counsel also told the court it had "to look at the mitigation factors" listed in the revised statute.

Notwithstanding these references by counsel to the requirements of section 1385 as amended, the trial court never mentioned any of the nine enumerated mitigating circumstances —including the undisputed fact that Vuong's serious felony prior took place more than five years before his 2015 burglary—nor did it acknowledge the statutory mandate to "consider and afford great weight" to the defendant's evidence of any mitigating factor, which—the Legislature stated—"weighs greatly in favor of dismissing the enhancement."  (§ 1385, subd. (c)(2).)  And while the court stated it was not at all confident Vuong would not "continue on his criminal endeavors" if released, it made no explicit finding that "dismissal of the enhancement would endanger public safety" as defined in the statute.  (*Ibid*.)  Nothing in the record suggests the victim in the 2015 California burglary, or any of the victims in the Hawaii burglaries, suffered "physical injury."  Of course, residential burglary with a true finding on a "person present" allegation is a violent felony under section 667.5, subdivision (c)(21).  (See *Doe v. Saenz* (2006) 140 Cal.App.4th 960, 988 ["Occupied burglary plainly presents a potential for violence and consequently merits enhanced punishment."].)  But the court did not make a finding that— even though no one sustained physical injury in the burglaries— dismissing Vuong's five-year prior "would endanger public safety."

14

In short, where—as here—we cannot determine from the record whether the court was aware of, and complied with, the provisions of the governing statute, we must remand the matter for the court to apply the applicable law.  (See *People v. Johnson* (2022) 83 Cal.App.5th 1074, 1093 ["remand for informed exercise of the trial court's discretion is appropriate"].)  Here, that governing law requires a rebuttable presumption that Vuong is entitled to have his serious felony prior stricken—as it is more than five years old—absent a factual finding of danger to public safety under section 1385, subdivision (c)(2). In exercising its discretion, the trial court must comply with the statutory provision that the presence of a mitigating circumstance (whether it's the more-than-five-years-old factor or any other mitigating factor Vuong proves on remand) "weighs greatly in favor of dismissing the enhancement," unless the court finds striking that enhancement would endanger public safety as the amended statute defines it.

## DISPOSITION

Hung Si Vuong's sentence is vacated.  The matter is remanded for resentencing and the trial court's exercise of its discretion in accordance with this opinion and the dictates of Penal Code section 1385.


**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**



EGERTON, J.


We concur:



EDMON, P. J.



LAVIN, J.